Argued and submitted February 24, affirmed December 27, 2000

ALLISON MAXINE BACHMAN,
*Petitioner,*

*v.*

RICKY DUAINE BACHMAN,
*Respondent.*

STATE OF OREGON,
*Respondent,*

*v.*

RICKY DUAINE BACHMAN,
*Appellant.*

(9709-70246; CA A105221 (Control))

ALLISON MAXINE STUBBERT,
*Petitioner,*

*v.*

RICKY DUAINE BACHMAN,
*Respondent.*

STATE OF OREGON,
*Respondent,*

*v.*

RICKY DUAINE BACHMAN,
*Appellant.*

(9809-69787; CA A105256)
(Cases Consolidated)

16 P3d 1185

Kirkland T. Roberts argued the cause and filed the brief for appellant.

Laura S. Anderson, Assistant Attorney General, argued the cause and filed the brief for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals from a judgment holding him in contempt of court for violating a restraining order and from a judgment holding that he violated his probation. These two cases were tried together and are consolidated on appeal. Defendant assigns error to (1) the trial court's denial of his motion to dismiss for improper venue and, (2) the trial court's finding a probation violation based on his violation of the restraining order.[1] The question is whether, when a Multnomah County Circuit Court has issued a restraining order pursuant to the Family Abuse Prevention Act (FAPA),[2] ORS 107.700 to ORS 107.732, and the conduct violating that FAPA order occurred in Washington County, the Multnomah County Circuit Court is the proper venue for prosecution of the punitive contempt. The trial court held that venue was properly in Multnomah County. We review for errors of law, ORS 138.220, and affirm.

On September 5, 1997, Allison Bachman, while residing in Multnomah County, obtained a restraining order (FAPA Order 1), issued by the Multnomah County Circuit Court, against defendant to prevent abuse pursuant to FAPA. In October 1997, defendant was charged with violating that order. In November 1997, he pleaded guilty to that offense and was found in contempt by the Multnomah County court and placed on probation.

On September 25, 1998, Bachman obtained a second restraining order (FAPA Order 2), again issued by a Multnomah County Circuit Court, against defendant. When FAPA Order 2 was issued and served on defendant, Bachman resided in Washington County and defendant in Multnomah County. On December 2, 1998, defendant allegedly "willfully enter[ed] or attempt[ed] to enter the residence of [Bachman] * * * [and was in] an area within 150 feet of" Bachman in Washington County. Defendant was charged, by the Multnomah County Court, with two counts of violating FAPA

---

[1] Because we that hold venue was proper in Multnomah County, we need not address defendant's second assignment of error, which is contingent on the success of his first assignment of error.

[2] Formerly known as the Abuse Prevention Act.

Order 2. Defendant moved to dismiss the complaint for improper venue. Defendant argued that ORS 33.065(5) and (6) required him to be tried for contempt in Washington County, because that is where the violation occurred. He claimed that because he was being prosecuted for punitive contempt, it was a criminal action, and the charge of contempt had to comply with ORS 131.305(1)—the criminal venue statute—and Article I, section 11, of the Oregon Constitution. The trial court denied defendant's motion, stating:

> "Oregon is one of only a handful of states in which violation of a Restraining Order is not itself a crime and that enforcement of these orders is always through the contempt statute. And then what else is interesting about Oregon is we are the only state that has the remedial and punitive contempt statute. That statute, Chapter 33, is unique in the country. And I have always been surprised there haven't been more of these kinds of issues raised about what that statute really is and says, and then the Court has to read the [FAPA] with Chapter 33 and using the rule of construction that where the Legislature is more specific, that takes precedence where it uses more general language.

> "This case is part of the [FAPA] case in which this Court has already established jurisdiction of these parties, and I think that includes jurisdiction. You go on and do whatever there is to do under [FAPA] and under this case. So I think this Court does have jurisdiction, has previously established that and venue with respect to both these parties and anything that rises out of this case. And that I think the cases, including *Pyle* [*and Pyle*, 111 Or App 184, 826 P2d 640 (1992)], [*State ex rel*] *Hathaway* [*v.*] *Hart*, [300 Or 231, 708 P2d 1137 (1985)], and some others, are, if not controlling, at least highly persuasive. I think probably controlling particularly is *Pyle*. But at the very least, I think this Court has concurrent jurisdiction with Washington County.

> "So the motion to dismiss is denied."

The court thereafter found defendant in contempt on both counts and, again, placed him on probation. The trial court also found him to be in violation of his probation that resulted from his violation of FAPA Order 1 and continued that probation as well.

■    On appeal, defendant argues that the trial court erred in denying his motion to dismiss the Multnomah County complaint for improper venue. Specifically, he argues that because he was prosecuted for contempt of court and punitive sanctions were imposed, ORS 33.065(5) and (6)[3] grant him all the statutory and constitutional protections a defendant would be allowed in a criminal proceeding, which includes venue. Defendant also argues that because the Multnomah County restraining order was allegedly violated in Washington County, and ORS 33.065 does not include a specific venue provision, Washington County is where venue should lie either under ORS 131.305(1)[4] or Article I, section 11.[5] The state argues that ORS 131.305(1) does not apply to the contempt proceeding because it arose out of the earlier FAPA proceeding held in Multnomah County. Thus, because the gravamen of a contempt proceeding is a violation of a court order and because both venue and jurisdiction were previously established over the parties, venue continues to be proper in Multnomah County. In response to defendant's alternative argument that Article I, section 11, entitles him to venue in Washington County, the state argues that because this court has held that a criminal contempt proceeding is not a criminal prosecution within the meaning of the constitution, *Pyle*, 111 Or App at 186, Article I, section 11, is inapplicable.[6]

―――――――――

[3] ORS 33.065(5) and (6) provide:

"(5) Except as otherwise provided by this section, the accusatory instrument is subject to the same requirements and laws applicable to an accusatory instrument in a criminal proceeding, and all proceedings on the accusatory instrument shall be in the manner prescribed for criminal proceedings.

"(6) Except for the right to a jury trial, the defendant is entitled to the constitutional and statutory protections, including the right to court-appointed counsel, that a defendant would be entitled to in a criminal proceeding in which the fine or term of imprisonment that could be imposed is equivalent to the punitive sanctions sought in the contempt proceeding. This subsection does not affect any right to a jury that may otherwise be created by statute."

[4] ORS 131.305(1) provides that "[e]xcept as otherwise provided in ORS 131.305 to 131.415, criminal actions shall be commenced and tried in the county in which the conduct that constitutes the offense or a result that is an element of the offense occurred."

[5] Article I, section 11, provides that "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed[.]"

[6] Neither party cited ORS 133.381 nor ORS 133.450. Therefore we have not considered those statutes in deciding this case.

██ ██ The issue involved in defendant's first assignment of error is one of statutory construction and our goal is to ascertain the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). The first level of analysis is to examine the text and context of the applicable statutes. Context includes other provisions of the statute and related statutes. *Id.* at 611. If that analysis clearly identifies the legislature's intent, the inquiry ends. *Id.* Because we find the legislature's intent to be apparent from an analysis of both the text and context of the statute, we do not proceed beyond the first level.

The statutes regulating contempt proceedings, ORS 33.015 to ORS 33.155, which are considered "special proceedings," lack any provision relating to venue. Further, since the relevant contempt statutes were substantially revised in 1991,[7] no case has interpreted those revised provisions or the question at hand. Therefore, this is a question of first impression.

Defendant claims that ORS 131.305(1) applies because ORS 33.065(5) and (6) state that, "all proceedings * * * shall be in the manner prescribed for criminal proceedings" and that a "defendant is entitled to the constitutional and statutory protections * * * that a defendant would be entitled to in a criminal proceeding[.]" He suggests that, because his contact with Bachman occurred in Washington County, ORS 131.305(1) dictates that any proceeding against him be commenced in that county. The question thus narrows to whether the legislature intended venue to be a statutory or constitutional protection afforded to a defendant in a contempt proceeding where punitive sanctions are imposed.

We first address whether venue is a statutory protection. Defendant argues that venue should be determined by reference to the Oregon Criminal Code because it includes a definition for "criminal proceeding." Defendant asserts that, because "the legislature intended that certain legal terms that are common to both the contempt proceeding statutes and the criminal procedure code * * * would carry the same meaning and be interpreted in the same manner[,]" ORS 131.305(1) applies. We disagree.

---

[7] Or Laws 1991, ch 724, §§ 1-14.

The legislature defined contempt of court as a wilful "[d]isobedience of * * * *the court's* * * * *orders*[.]" ORS 33.015(2)(b) (emphasis added). The court's order here is the FAPA order issued by a Multnomah County Circuit Court. Moreover, the court's power to impose a punitive sanction for contempt is inherent. ORS 33.025(1). Specifically,

> "[t]he court's authority to punish for criminal contempt arises from a different source than its authority to punish for an ordinary crime. The latter authority is found only in legislative enactment. The former is not only statutory, * * * but also *'is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice.' Ex Parte Robinson*, 86 US (19 Wall) 505, 510, 22 L Ed 205 (1873). The court's enforcement of its contempt power occurs in a *unique proceeding." Hathaway*, 300 Or at, 237-38 (emphasis added).

Thus, *Hathaway's* description of a contempt proceeding necessarily connotes that a contempt proceeding is neither civil nor criminal. Instead, it is a unique and inherent power of a court to ensure compliance with its orders.

The state argues that *Hathaway* is instructive. The Oregon Supreme Court held that the defendant was not entitled to a jury trial in a criminal contempt[8] proceeding for violating a restraining order entered under FAPA. Defendant, however, argues that because the contempt statutes were substantially revised in 1991, and *Hathaway* involved an interpretation of the *prior* contempt statutes, *Hathaway* "is not binding on this court, nor controlling to the specific issue raised herein[.]" Although this case involves an interpretation of the revised contempt statutes, we agree with the state that the court's description of the general nature of the contempt power, and the particular application and purpose of that power in a FAPA proceeding, remain instructive.[9] In

---

[8] Contempt is no longer referred to as civil or criminal under the revised contempt statutes. "Rather, contempt is categorized by the sanction sought, either remedial or punitive." *Dahlem and Dahlem*, 117 Or App 343, 346, 844 P2d 208 (1992) (footnote omitted).

[9] We reach that conclusion primarily because the key language of the prior and revised contempt statutes regarding what constitutes contempt of court are

*Hathaway*, the court explained the nature of a contempt proceeding as it related to FAPA as follows:

"[FAPA] was not designed by the legislature to be enforced by normal criminal procedures as actions at law. Rather, the legislature intended the Act 'to strengthen legal protection for persons threatened with assault by a present or former spouse or cohabitant.' * * *

"* * * the essence of [FAPA] is to prevent acts of family violence through restraining orders and, if the court orders are disobeyed, to provide legal sanctions for the violations of the orders because ordinary criminal actions at law were found to be inadequate to achieve this desired legislative result.

"The sanctions for contempt were to provide legal teeth for enforcement of court orders against violators and not to replace normal criminal prosecutions." 300 Or at 236-37 (footnotes omitted).

Thus, because contempt is the violation of a court's order, and FAPA was not intended by the legislature to be enforced by the criminal laws, we conclude that the legislature also did not intend the venue provision of the criminal code to apply to a contemnor for violating a FAPA order. Rather, the court issuing the initial order has the continuing power to enforce its order through a contempt proceeding if that order is subsequently violated.

We also find *Pyle* to be instructive, although it concerned jurisdiction rather than venue. In *Pyle*, the defendant argued that the Oregon court did not have jurisdiction over him because the acts alleged to have violated a restraining order entered against him in Oregon did not occur in Oregon, but rather in Washington. We disagreed and held that the Oregon court had jurisdiction, holding that, "[t]he location from which the calls were made, or where they were received,

---

similar. *Compare former* ORS 33.010(1)(e) (1989) *repealed by* Or Laws 1991, ch 724, § 32 (defining contempt as "[d]isobedience of any lawful * * * order * * * of the court") *with* ORS 33.015(2)(b) (1999) (defining contempt as "[d]isobedience of * * * the court's * * * orders"). Further, FAPA has remained relatively unchanged since the court's holding in *Hathaway*. Thus, *Hathaway* remains authoritative on its analysis of the interrelationship between the legislature's intent regarding the enactment of and the enforcement mechanisms of FAPA and how the purpose and nature of a contempt proceeding fit into that statutory scheme.

*is not material.* Plaintiff's affidavit alleging facts constituting a violation of the order was sufficient to confer authority on the court to enforce *its* order." 111 Or App at 187 (emphasis added; footnote omitted). Thus, as in *Pyle*, it is not relevant in this case *where* the order was violated, but that it *was* violated. The court that issued the order—the Multnomah County Circuit Court—retained the inherent power to enforce its order by imposing sanctions. *See Myers v. Golden*, 95 Or App 80, 83-84, 767 P2d 481 (1989) ("A contempt proceeding is not to resolve disputes between litigants; rather, it is a proceeding to enforce orders or judgments of a court, including imposition of sanctions.").

Therefore, we agree with the state that because the gravamen of a contempt proceeding is a violation of a court's order, it was the legislature's intent that the court issuing the order has the continuing power to impose sanctions when that order is violated.

■   We next address whether venue was intended as a constitutional protection. Defendant argues that Article I, section 11, of the Oregon Constitution, provides him with a constitutional right to have his punitive contempt proceeding prosecuted in Washington County. We disagree. Article I, section 11, is inapplicable because "[a] criminal contempt proceeding is not a criminal prosecution within the meaning of the constitution." *Pyle*, 111 Or App at 186.[10] Thus, defendant's second argument must fail as well.

We hold that the legislature did not intend venue to be a statutory protection available to a contemnor when punitive sanctions are imposed. Moreover, Article I, section 11, does not apply because contempt is not a criminal prosecution. Contempt is violation of a court order, and the court that issued that order has the power to impose sanctions if that order is violated.

Affirmed.

---

[10] Defendant does not argue that *Pyle* should be reconsidered in light of *Brown v. Multnomah County District Court*, 280 Or 95, 570 P2d 52 (1977).