**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FERENC SZALAI,

*Petitioner*

v.

ERIC H. HOLDER JR.*

*Respondent*

No. 06-74994

Agency No.
A26-262-804

OPINION

Petition for Review of an Order
of the Board of Immigration Appeals

Argued and Submitted
October 24, 2008—Portland, Oregon

Filed July 16, 2009

Before: A. Wallace Tashima and Milan D. Smith, Jr.,
Circuit Judges, and George H. Wu,** District Judge.

Per Curiam Opinion;
Concurrence by Judge Wu

---

\* Eric H. Holder Jr. is substituted for his predecessor Michael B.
Mukasey as Attorney General of the United States, pursuant to Fed. R.
App. P. 43(c)(2).

\** The Honorable George H. Wu, United States District Judge for the
Central District of California, sitting by designation.

9089

## COUNSEL

Teresa A. Statler, Immigration Law Office of Teresa A. Statler, Portland, Oregon for the petitioner.

Wendy Benner-Leon, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C. for the respondent.

## OPINION

PER CURIAM:

The question raised in this case is whether a judgment holding an individual in contempt for disobeying the "stay away" portion of a restraining order issued pursuant to Oregon's Family Abuse Prevention Act ("FAPA"), Oregon Revised Statutes §§ 107.700 to 107.735 (2007), qualifies as a violation of a "protection order" under 8 U.S.C. § 1227(a)(2)(E)(ii). Petitioner Ferenc Szalai, a native and citizen of Hungary and a lawful permanent resident of this nation, appeals from an order of the Board of Immigration Appeals ("BIA") dismissing his appeal and affirming the decision of an Immigration Judge ("IJ") which denied his request for cancellation of removal and other forms of relief. We have jurisdiction pursuant to 8 U.S.C. § 1252 and we deny the petition for review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 3, 2002, Petitioner's ex-wife obtained a FAPA "Restraining Order to Prevent Abuse" from the Circuit Court for the State of Oregon, Washington County. That restraining order contained a number of separate provisions, including terms 1) enjoining Petitioner from "intimidating, molesting, interfering with or menacing" his ex-wife or any minor children in her custody (or attempting to do any of those things),

2) enjoining Petitioner from entering or attempting to enter various locations, including his ex-wife's residence and areas within 100 yards of his ex-wife or her residence, and 3) enjoining Petitioner from contacting or attempting to contact his ex-wife in person or through "3rd party contact" by phone, mail and e-mail (except "regarding parenting time" with his children). However, the restraining order was soon thereafter modified to permit Petitioner to pick up the children from or deliver them to his ex-wife's residence so long as he remained curbside and (except to put a child in a car seat) inside his vehicle.

On February 18, 2002, Petitioner returned his son to his ex-wife's residence and walked halfway up the driveway.[1] A "Judgment on Contempt Hearing" reflects that, on April 29, 2002, the Washington County Circuit Court found Petitioner, beyond a reasonable doubt, in "wilful contempt for violation of the restraining order" in connection with the February 18 incident.[2] In particular, the court found that Petitioner had vio-

---

[1]This fact is derived from an Affidavit in Support of Probable Cause Arrest and from an incident report that was part of a police report, both of which were filed in connection with the violation of restraining order contempt proceedings and which appear to have been before both the IJ and the BIA. Ordinarily, we could not rely upon those sources to establish this fact if we follow the "modified" categorical approach that Petitioner asserts applies. *See United States v. Lopez-Solis*, 447 F.3d 1201, 1210 (9th Cir. 2006); *United States v. Kelly*, 422 F.3d 889, 895-96 (9th Cir. 2005); *Parrilla v. Gonzales*, 414 F.3d 1038, 1043-44 (9th Cir. 2005). Ultimately, however, reliance on those documents is unnecessary for purposes of determining whether Petitioner's offense qualifies as a violation of a "protection order" under 8 U.S.C. § 1227(a)(2)(E)(ii), the pertinent issue in this proceeding.

[2]Under FAPA, violation of a restraining order gives rise to contempt proceedings. As explained in *Bachman v. Bachman*, 16 P.3d 1185, 1188 (Or. Ct.App. 2000) (quoting *Hathaway v. Hart*, 708 P.2d 1137, 1139 (Or. 1985)), "the essence of [FAPA] is to prevent acts of family violence through restraining orders and, if the court orders are disobeyed, to provide legal sanctions for the violations of the orders because ordinary criminal actions at law were found to be inadequate to achieve this desired legislative result."

lated the order "by being within 100 yards of [Petitioner's ex-wife] not allowed by rest. order." The court sentenced Petitioner to serve 60 days in jail (with credit for time served and a suspension of the remainder), placed him on formal probation for a period of two years, ordered him to undergo treatment and counseling for anger, mental health and domestic violence, and required that any further exchange of children would take place at the police station in Beaverton, Oregon.

Over a year later, Department of Homeland Security authorities arrested Petitioner and served him with a Notice to Appear. The government charged Petitioner with violating the portion of a domestic restraining order that involved protection against credible threats of violence, repeated harassment, or bodily injury to his ex-wife, making him subject to removal under 8 U.S.C. § 1227(a)(2)(E)(ii).

The IJ assigned to the case terminated removal proceedings with prejudice upon determining that Petitioner's violation of the 100 yard stay away portion of the restraining order did not bring Petitioner within the meaning of section 1227(a)(2)(E)(ii). On appeal, the BIA disagreed, vacating the IJ's decision and remanding the matter. Petitioner asserts that, in reaching its decision, the BIA improperly relied upon a police report that the IJ had entered into evidence below. Petitioner refers to the following language from the BIA's ruling:

> In the instant case, the record includes a copy of the police report[3] respecting [Petitioner's] arrest. It shows that during a drop off of his child, [Petitioner] did not remain in his car, did not remain at curbside, but got out of his car and walked up halfway up [*sic*] his ex-wife's driveway . . . .

---

[3]Although the BIA referenced a "police report," it in fact cited to an Affidavit in Support of Probable Cause Arrest which was filed as part of a certified copy of Petitioner's conviction record.

The BIA then concluded that Petitioner's conduct fell within the terms of section 1227(a)(2)(E)(ii).

Upon remand, Petitioner applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(a), and for — in the alternative — asylum, withholding of removal, and/or relief under the Convention Against Torture. The IJ denied all of Petitioner's requested forms of relief and ordered him removed to Hungary. Petitioner appealed the IJ's order and the BIA dismissed the appeal.[4]

## II.   DISCUSSION

### A.   *Standard of Review*

The Ninth Circuit reviews *de novo* whether a conviction constitutes a removable offense under the Immigration and Nationality Act. *See Alanis-Alvarado v. Holder*, 558 F.3d 833, 836 (9th Cir. 2009); *Coronado-Durazo v. INS*, 123 F.3d 1322, 1324 (9th Cir. 1997). The BIA's determination of purely legal questions regarding the Immigration and Nationality Act — such as its application of a particular statutory section — is likewise reviewed *de novo*. *See Lafarga v. INS*, 170 F.3d 1213, 1215 (9th Cir. 1999).[5]

---

[4]In his petition to this court, Szalai does not challenge the denial of his request for asylum, withholding of removal, and/or relief under the Convention Against Torture.

[5]The BIA's interpretation and application of the immigration laws are nevertheless entitled to deference in certain instances under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 908-11 (9th Cir. 2009). The government argues that the BIA's interpretation of section 1227(a)(2)(E)(ii) is entitled to such deference here, whereas Petitioner points out that the BIA's interpretation is due no deference when its construction is contrary to the statute's "plain and sensible meaning." *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1061 (9th Cir. 2008) ("We will not defer to the BIA when its construction of a statute defies its 'plain and sensible meaning.' *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir.

B.   *Analysis*

   1.   *Categorical Analysis of the Oregon FAPA Restraining Order*

**[1]** Petitioner is charged with removability under 8 U.S.C. § 1227(a)(2)(E)(ii) which provides, in pertinent part:

   (a) Classes of deportable aliens

      Any alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:

                     . . . .

      (2) Criminal offenses

                     . . . .

            (E) Crimes of domestic violence, stalking, or violation of protection order, crimes against children and[6]

---

2003)"); *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 678 (9th Cir. 2005) (applying *Chevron* deference principles to BIA's construction of section 1227(a)(1)(E)(I)); *Singh v. Ashcroft*, 386 F.3d 1228, 1230-31 (9th Cir. 2004) (rejecting call for *Chevron* deference in interpreting state and federal criminal laws in context of removal proceeding under section 1227(a)(2)(E)(i)). We need not reach the *Chevron* question, however, because Petitioner's argument regarding his desired construction of section 1227(a)(2)(E)(ii) is foreclosed by a recent controlling Ninth Circuit case (*i.e. Alanis-Alvarado*), as discussed further below. That controlling case, which addressed arguments similar to those raised herein, made no mention of *Chevron* or the deferential review required by that case and doctrine.

   [6]The United States Code Annotated provides, in a footnote, that this language was "[s]o in original." *See* 8 U.S.C.A. § 1227 at pages 326 and 331 (Thomson/West 2005).

. . . .

(ii) Violators of protection orders

Any alien who at any time after admission is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates *the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued* is deportable. For purposes of this clause, the term "protection order" means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence, including temporary or final orders issued by civil or criminal courts (other than support or child custody orders or provisions) whether obtained by filing an independent action or as a pendente lite order in another proceeding.

8 U.S.C.A. § 1227(a)(2)(E)(ii) (2005 & Supp. 2007) (emphasis added). The question here is whether Petitioner's violation of the restraining order by being within 100 yards of his ex-wife's residence (without falling within the conditions set in connection with the provision for delivery or pick-up of children) brings him "categorically" within the scope of section 1227(a)(2)(E)(ii).

Petitioner admits that all provisions of the FAPA restraining order at issue in this case generally involve protection of persons who obtain the order, but insists that not all provi-

sions of a FAPA restraining order "involve[ ] protection against credible threats of violence, repeated harassment, or bodily injury." Petitioner argues that to read section 1227(a)(2)(E)(ii) as the BIA has in his case would be to render superfluous the words "the portion of." In essence, he contends that the BIA's interpretation means the violation of any provision in a protective or restraining order would render someone in his position removable. That, however, is not the argument which the government espouses or the position that the BIA took.

The government concedes that there are certain provisions which might be encompassed within a FAPA restraining order which, at least arguably, would not fall within the terms of section 1227(a)(2)(E)(ii); for example, provisions requiring attendance at and payment for a counseling program or requiring the payment of costs for supervision during parenting time. *See* OR. REV. STAT. § 107.718(6)(c), (e). In addition, although the case dealt with California law, in *Alanis-Alvarado* we specifically cited Oregon Law as allowing for a provision requiring support for the spouse or children as part of a protective order. *See* 558 F.3d at 840 (citing OR. REV. STAT. § 107.718(1)(h), which permits a restraining order to include an award of monetary assistance). We then noted that "[a] conviction for violating a protection order issued under such a statute would require additional proof as to 'what portion' of the protection order was violated." *Id.* Had such a provision been involved here and had the government charged Petitioner with being removable for having violated it, his argument might have some weight. But as the record clearly indicates, Petitioner was not charged with having violated any support provision or with removability in connection with any such provision.

Citing *Gerlack v. Roberts*, 952 P.2d 84, 86-87 (Or. Ct. App. 1998), Petitioner also argues that, under Oregon law, a court considering a charge that an individual violated a restraining order must make a special finding as to each provision or con-

dition of the order violated. Here, the Oregon court only found that Petitioner violated the provision requiring him to stay more than 100 yards away from his ex-wife, not the other portions of the restraining order which are, on their face, more directly tied to "credible threats of violence, repeated harassment, or bodily injury." *See Alanis-Alvarado*, 558 F.3d at 839 ("[S]ome acts, such as telephoning one's domestic partner or coming within a specified distance of him or her, do not typically constitute violence, threats, or harassment.").

However, even if Petitioner's reading of *Gerlack* is accurate (and it is not clear that it is), that the Oregon court only found Petitioner in violation of the 100 yard stay away prohibition is not to say that such a provision does not "involve[ ] protection against credible threats of violence, repeated harassment, or bodily injury." Indeed, in *Alanis-Alvarado*, we discussed the distinction a statute such as section 1227(a)(2)(E)(ii) inherently draws between assessing what an accused individual has actually done in violating a protective order versus the purpose that a protective order serves:

> If the INA provision required the state court to find that petitioner *actually had engaged* in violent, threatening, or harassing behavior, we would conclude that Petitioner's convictions do not qualify categorically. But the INA provision requires something different: that the state court conclude that Petitioner violated "the portion of a protection order that *involves protection against*" violence, threats, or harassment. 8 U.S.C. § 1227(a)(2)(E)(ii) (emphasis added). As discussed above, an injunction against making a telephone call (and all the other enumerated acts in section 6320) "involves protection against" violence, threats, or harassment, even if it is possible that Petitioner's violative conduct did not independently constitute violence, threats, or harassment.

558 F.3d at 839-40.

[2] Ultimately, Petitioner's arguments are foreclosed by the reasoning in *Alanis-Alvarado*. At issue in that case was section 6320 of the California Family Code which provided:

> The court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, *coming within a specified distance of*, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members. [Emphasis added.[7]]

We were unable to determine from the record in that case (which, under the modified categorical approach that we adopted, consisted of the petitioner's two guilty pleas) which portion of a section 6320 protective order the petitioner had violated.[8] *See* 558 F.3d at 839. Nevertheless, we concluded there that *"every portion"* of a protective order issued under that statute "involves protection against credible threats of violence, repeated harassment, or bodily injury." *Id.* at 839-40 (emphasis in original). Because section 6320 of the California Family Code permitted protective orders which merely prevent a party from "coming within a specified distance of" another party and because we concluded that *any* protective order issued under section 6320 met the definition of section

---

[7]As we noted in *Alanis-Alvarado*, section 6320 was amended in 2007 — after the protective orders in that case were issued and after the petitioner had been convicted. *See* 558 F.3d at 838 n.3.

[8]In this case, the Judgment on Contempt Hearing specified that Szalai had violated the restraining order's 100 yard stay away provision.

1227(a)(2)(E)(ii), Petitioner's arguments here are untenable. *Id.*

At oral argument,[9] Petitioner emphasized that in *Alanis-Alvarado* we concluded only that all portions of a section 6320 protective order served the purpose of section 1227(a)(2)(E)(ii) because the issuance of an order under section 6320 required "a showing of 'reasonable proof of a past act or acts of abuse.' " *Id.* at 838, *quoting* Cal. Fam. Code § 6300. However, a FAPA restraining order imposes a similar threshold requirement and more. *See In re Marriage of Ringler*, 188 P.3d 461, 466 (Or. Ct. App. 2008) ("Under ORS 107.710, in order to obtain a FAPA restraining order, a petitioner must prove, by a preponderance of evidence, that he or she has been the victim of 'abuse,' as that term is defined in ORS 107.705."[10]); OR. REV. STAT. § 107.718(1) (indicating that the court may issue a FAPA restraining order upon a showing that the individual "has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition," and "that there is an imminent danger of further abuse to the [individual] and that the respondent represents a credible threat to the physical safety of the [individual] or the [individual's] child . . . ."). Moreover, in issuing the FAPA order here, the Oregon court in fact found that Petitioner had abused his ex-wife within the meaning of OR. REV. STAT. § 107.705, and that he "represents a credible threat to

---

[9]The opinion in *Alanis-Alvarado* was originally filed on September 3, 2008, *see* 541 F.3d 966, after briefing was completed in this case, and amended on March 3, 2009, *see* 558 F.3d 833. Although only the original opinion was available at the time of oral argument, none of the subsequent amendments affects our analysis or *Alanis-Alvarado*‡'s application to this case.

[10]"Abuse" under FAPA means "[a]ttempting to cause or intentionally, knowingly or recklessly causing bodily injury," "[i]ntentionally, knowingly or recklessly placing another in fear of imminent bodily injury," or "[c]ausing another to engage in involuntary sexual relations by force or threat of force." OR. REV. STAT. § 107.705(1); *see also Boyd v. Essin*, 12 P.3d 1003, 1004 (Or. Ct. App. 2000).

the physical safety of [his ex-wife] or [her] child and there is an imminent danger of further abuse . . . .” Petitioner’s attempt to distinguish *Alanis-Alvarado* is therefore unavailing.

**[3]** We are bound by *Alanis-Alvarado*. However, as in that case, based on the government’s concession that the full range of conduct proscribable under a FAPA restraining order is broader than section 1227(a)(2)(E)(ii), we conclude that “Petitioner’s conviction does *not* suffice under the categorical approach.” *See* 558 F.3d at 837 (emphasis in original). We therefore proceed to an examination under the modified categorical approach.

### 2.   *The Modified Categorical Approach*

**[4]** The parties dispute whether the BIA relied upon improper material in reaching its decision and even whether we have jurisdiction to resolve that issue. In light of *Alanis-Alvarado*, however, we need not reach those disputes. Even assuming that the BIA erred by considering the police report,[11] Petitioner does not deny that he violated the restraining order’s 100 yard stay away provision which we concluded in Alanis-Alvarado “involves protection against credible threats of violence, repeated harassment, or bodily injury.” Given the import of *Alanis-Alvarado*, all information necessary to the section 1227(a)(2)(E)(ii) analysis here was contained in the FAPA restraining order and the Judgment on Contempt Hearing, documents which Petitioner admits may be considered under the modified categorical approach. *See Kawashima v. Mukasey*, 530 F.3d 1111, 1114 n.4 (9th Cir. 2008), *abrogated in part*, *Nijhawan v. Holder*, ___ U.S. ___, 129 S.Ct. 2294 (2009). Thus any error in the BIA’s consideration of the police report was harmless.

---

[11]We note that, in *Alanis-Alvarado*, we followed the modified categorical approach, albeit without obviously rejecting an argument that we should not do so. *See* 558 F.3d at 836-37.

The petition for review is DENIED.

---

WU, District Judge, concurring:

I concur in the result reached in the majority opinion and in most of its analysis based upon the decision in *Alanis-Alvarado v. Holder*, 558 F.3d 833 (9th Cir. 2009), except as noted herein.

*Alanis-Alvarado* holds, *inter alia*: 1) that the issue of whether a petitioner has violated a "protection order" under 8 U.S.C. § 1227(a)(2)(E)(ii) is to be determined under the "categorical approach" and the "modified categorical approach" first announced in *Taylor v. United States*, 495 U.S. 575 (1990), and 2) that the petitioner's pleas to violating court orders issued pursuant to California Family Code § 6320 fell within section 1227(a)(2)(E)(ii) because section 6320 "is part of a statute that, in its entirety, aims to prevent domestic violence, authorizes a court to enjoin abusive acts, upon a showing of a past act of abuse . . . . [; and] *every portion* of a protective order issued under Section 6320 'involves protection against credible threats of violence . . . or bodily injury.' 8 U.S.C. § 1227(a)(2)(E)(ii)." 558 F.3d at 836, 838-39 (emphasis in original). I believe that the latter holding in *Alanis-Alvarado* is binding on this case and consequently Petitioner Szalai's petition for review must be denied. However, I also conclude that *Alanis-Alvarado*'s initial holding (as to the applicability of *Taylor*‡'s categorical and modified categorical approaches to section 1227(a)(2)(E)(ii)) was simply assumed without analysis and is incorrect.

Admittedly, it has been noted that "the lower courts uniformly have applied the approach . . . in *Taylor v. United States*" to determine whether a conviction for violating a state criminal law falls within one of the removable offenses listed in 8 U.S.C. § 1227(a). *Gonzales v. Duenas-Alvarez*, 549 U.S.

183, 185-86 (2007). However, the precise problem raised in the *Taylor* scenario and addressed by the Court's categorical and modified categorical approaches (while present where the application of a federal statute is predicated on the conviction of a crime which is undefined in the federal statute and where the conviction occurs in a state court) is not present in the context of section 1227(a)(2)(E)(ii), which is premised on a violation of a "protection order" which is defined in the federal statute itself.

In *Taylor*, the issue concerned the meaning of the word "burglary" as it was used in 18 U.S.C. § 924(e), which provided for a sentence enhancement for persons with three prior convictions for "a violent felony or a serious drug offense." *See* 495 U.S. at 578-80. A "violent felony" was defined to include "burglary" which was not itself defined in the then-current version of the statute. *Id.* at 581-82. After reviewing the relevant legislative history of section 924(e), the Court concluded that Congress intended "burglary" to have its "generic" meaning (*i.e.*, having the basic elements of "an unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime"). *Id.* at 598. It further held that the burglary predicate would not depend on the definition of "burglary" adopted by the State of conviction, but rather it would have to comply with the "categorical approach," which required the inclusion of the elements of burglary as delineated in the "generic" definition. *Id.* at 588-90. Thus, under *Taylor*, a sentencing court in considering whether a state conviction constituted a burglary predicate was initially to employ what is now referred to as the "categorical approach" and determine if the state statute defining burglary was no broader than the generic definition of the crime.[1]

---

[1]The Court explained that: "If the state statute is narrower than the generic view, *e.g.*, in cases of burglary convictions in common-law States or convictions of first-degree or aggravated burglary, there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary." *Id.* at 599.

*Id.* at 599. If the state statute was no broader, then the analysis was complete. Moreover, that examination was limited "only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602. If, however, the state statute defined burglary more broadly (for example by not requiring that the initial entry be unlawful or unprivileged, or by including non-buildings such as cars or boats within its scope), the Court stated:

> This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id.*

In *Shepard v. United States*, 544 U.S. 13 (2005), the Court allowed, in limited situations, a further examination of evidentiary materials beyond charges and jury instructions. As stated therein:

> The Court did not, however, purport to limit adequate judicial record evidence strictly to charges and instructions, [*Taylor*, 495 U.S.] at 602, (discussing the use of these documents as an "example"), since a conviction might follow trial to a judge alone or a plea of guilty. In cases tried without a jury, the closest analogs to jury instructions would be a bench-trial judge's formal rulings of law and findings of fact, and in pleaded cases they would be the state-

ment of factual basis for the charge, Fed. Rule Crim. Proc. 11(a)(3), shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea. With such material in a pleaded case, a later court could generally tell whether the plea had "necessarily" rested on the fact identifying the burglary as generic, *Taylor, supra*, at 602, just as the details of instructions could support that conclusion in the jury case, or the details of a generically limited charging document would do in any sort of case.

544 U.S. at 20-21 (footnote omitted). However, the Court refused to permit further evidentiary explorations to be conducted beyond "conclusive records made or used in adjudicating guilt," such as examining police reports and other "documents submitted to lower courts even prior to charges." *Id.* at 21-23.

In light of the above, it is unclear why the "categorical" or "modified categorical" approaches would be applicable to the 8 U.S.C. § 1227(a)(2)(E)(ii) situation. Unlike "burglary" predicate situations where there are "generic" and apparently "non-generic" statutory definitions for the crime, section 1227(a)(2)(E)(ii) deals with "protection orders" where there is no such multitude of meanings. More importantly, the federal statute itself defines the term. Thus, there is no conflict between some "crime of conviction" and a "generic" crime. Hence, the very problem raised in *Taylor* (for which the "categorical" and "modified categorical" approaches were crafted in response) is absent here.[2] The fact that section

---

[2]As noted in *Kawashima v. Mukasey*, 530 F.3d 1111 (9th Cir. 2008), *abrogated in part*, *Nijhawan v. Holder*, ___ U.S. ___, 129 S.Ct. 2294 (2009): "The modified categorical approach . . . only applies when the particular elements in the crime of conviction are broader than the generic crime." *Id.* at 1115 (quoting *Navarro-Lopez v. Gonzales*, 503 F.3d 1063,

1227(a)(2)(E)(ii) is limited to violations of "the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person . . . for whom the protection order was issued" does not change the analysis.

There is a further basis for distinguishing the present situation from cases which require the application of the categorical/modified categorical approaches as developed in the *Taylor/Shepard* line of decisions, *i.e.*, by examining what is required for the predicate element in the underlying statutes. The Court in *Taylor* emphasized that 18 U.S.C. § 924(e)(1) requires that the defendant have prior *convictions*, and not merely have committed three previous crimes. 495 U.S. at 600-01. Further, the previous violent felony convictions must have involved the use or threat of force, a designated crime (such as burglary) or conduct that presents a serious potential risk of harm as an *element*, rather than simply have involved the use or threat force, the designated crime or serious risk of harm in the specific case. *Id.* at 600. It follows that a court, when evaluating convictions and elements, must constrain itself only to the fact of a conviction and its underlying elements (with a few exceptions). *Id.* at 602. Section 1227(a)(2)(E)(ii), on the other hand, does not require convictions, but only that the defendant "*engage[ ] in conduct*" that violates a protection order. 8 U.S.C. § 1227(a)(2)(E)(ii). In lieu of a conviction for a crime with such an element, this arguably should permit a court to venture outside the evidentiary realm of the categorical and modified categorical approaches. There would be no need to prohibit, say, examining police reports to determine if a defendant engaged in a

1073 (9th Cir. 2007)). In the context of 8 U.S.C. § 1227(a)(2)(E)(ii), even if one were to assume that the "crime of conviction" is the violation of the restraining/protective order, what exactly would the "generic" crime be? If there is no generic crime, why apply the modified categorical approach at all?

certain type of conduct so long as due process concerns are not violated.

The inapplicability of the categorical/modified categorical approaches to 8 U.S.C. § 1227(a)(2)(E)(ii) is strongly indicated by the Supreme Court's recent decision in *Nijhawan v. Holder,* ___ U.S. ___, 129 S.Ct. 2294, 2009 U.S. LEXIS 4320 (June 15, 2009). In that case, the issue was whether the alien petitioner had been convicted of an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). "Aggravated felony" is defined in 8 U.S.C. § 1101(a)(43)(M)(i) to include offenses involving "fraud or deceit in which the loss to the victim or victims exceeds $10,000. . . ." The petitioner had been convicted of mail fraud and related crimes but the jury made no findings as to the amount of the loss. *Nijhawan*, 129 S.Ct. at 2298. However, at sentencing, the petitioner stipulated that the loss exceeded $100 million. The Government subsequently sought to remove him from the United States on the basis of that conviction. The IJ held that he had been convicted of an "aggravated felony" under sections 1227(a)(2)(A)(iii) and § 1101(a)(43)(M)(i), and the Third Circuit agreed. *Id.*

On *certiorari*, the issue was whether — as to certain language in section 1101(a)(43)(M)(i), *i.e.* "an offense that . . . involves fraud or deceit *in which the loss to the victim or victims exceeds $10,000*" — the italized phrase refers to a necessary/generic element of the fraud or deceit "offense" or whether it refers to the particular circumstances in which the offender committed the more broadly defined fraud or deceit crime on the particular occasion. *Id.* If the former, then arguably the "categorical" approach delineated in *Taylor* would be applicable; if the latter, then a broader "circumstance-specific" analysis would be made. *Id.* at 2298-99. As stated in *Nijhawan*: "If the first, we must look to the statute defining the offense to determine whether it has an appropriate monetary threshold; if the second, we must look to the facts and circumstances underlying an offender's conviction." *Id.* The Court noted the split in the circuit courts which had adopted

the categorical/definitional approach (such as the Ninth Circuit in *Kawashima,* 530 F.3d at 1117), and those which employed a "fact-based approach" (such as the First and Fifth Circuits). *Id.* at 2298.

Eventually, the Court held that: 1) "the italicized language does not refer to an element of the fraud or deceit crime. Rather it refers to the particular circumstances in which an offender committed a (more broadly defined) fraud or deceit crime on a particular occasion" (*id.*); and 2) "we conclude that the 'fraud and deceit' provision before us calls for a 'circumstance-specific,' not a 'categorical,' interpretation" (*id*. at 2300). Of particular note is that, in Section III of the opinion, the Court specifically rejected the petitioner's request to borrow from *Taylor* a "modified categorical approach" to the analysis. *Id.* at 2302-03. In doing so, the Court found that the "evidentiary limitations" urged by the petitioner and applicable to the "modified categorical approach" were not required. *Id.* at 2303. As stated by the Court: "we have found nothing in prior law that so limits the immigration court. *Taylor*, *James* [*v. United States*, 550 U.S. 192 (2007)] and *Shepard*, the cases that developed the evidentiary list to which petitioner points, developed that list for a very different purpose, namely that of determining which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction." *Id.*

In conclusion, the central issues in determining whether Szalai falls within 8 U.S.C. § 1227(a)(2)(E)(ii) are: 1) does the Oregon FAPA restraining order qualify as a "protection order" under the definition delineated in the federal statute, and 2) did Szalai violate that portion of it which "involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued . . . ." Those matters can be resolved quite simply and without the extraneous burdens and restrictions of conducting a purported categorical

and/or modified categorical analysis.[3] *See generally*, *Chambers v. United States*, 555 U.S. ___, 129 S.Ct. 687, 693-95 (2009) (Alito, J., concurring) (observing that *Taylor's* " 'categorical approach' to predicate offenses has created numerous splits among the lower federal courts, the resolution of which could occupy this Court for years. [Footnote omitted.]."

---

[3]One might question whether the majority opinion in *Alanis-Alvarado* itself actually and/or correctly applied the categorical and modified categorical approaches delineated in *Taylor* and *Shepard*. Indeed, the dissent in *Alanis-Alvarado* accuses the majority of having incorrectly applied the modified categorical approach. 558 F.3d at 840-41 (Rawlinson, J., dissenting).

In *Alanis-Alvarado*, it was initially held that "a conviction under California Penal Code section 273.6, for violating a protective order issued pursuant to California Family Code section 6320, categorically qualifies as violation of a 'protection order' under 8 U.S.C. § 1227(a)(2)(E)(ii) . . . ." 558 F.3d at 835. However, later it was observed that "[e]xamining the 'full range of conduct' proscribed by section 273.6, Petitioner's conviction does *not* suffice under the categorical approach." *Id.* at 837 (emphasis in original). The court then turned to the modified categorical approach in order to examine the petitioner's "records of conviction." *Id.* In doing so, it cryptically noted that:

> Although this inquiry rides under the banner of the "modified categorical approach," the records of conviction here tell us only which combination of statutes authorized the protection order that Petitioner violated. Our modified categorical inquiry is therefore identical to a categorical inquiry: whether the INA provision embraces the "full range of conduct" under those state statutes. It is a kind of modified categorical inquiry nonetheless, because it is a second-tier inquiry.

*Id.* It is difficult to comprehend how a modified categorical inquiry can be "identical" to a categorical inquiry when going beyond the mere fact of conviction and the statutory definition of the operative crime is by definition the distinction between the categorical approach and the modified categorical approach. *See generally Gonzales*, 549 U.S. at 187; *Kawashima*, 530 F.3d at 1114.