No. 526 July 31, 2024 117

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SEBASTIEN BENOIT LUCIER,
*Defendant-Appellant.*

Josephine County Circuit Court
21CN02125; A177419

Pat Wolke, Judge.

Argued and submitted June 20, 2023.

James Brewer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals from the trial court's finding of contempt of a Family Abuse Protection Act (FAPA) order (the restraining order) and the imposition of a punitive sanction. He raises a single assignment of error, in which he makes two arguments. In his first argument, he asserts that the Josephine County Circuit Court lacked subject matter jurisdiction to enforce the restraining order because the order had originated out of Curry County, and courts lack jurisdiction to enforce another court's order by way of contempt. He acknowledges that ORS 107.728 expands that authority in the context of FAPA restraining orders, but he argues that the state failed to fulfill a jurisdictional requirement of that statute—specifically, the filing of a certified copy of the restraining order.[1] In his second argument, he asserts that, even if the trial court had jurisdiction, it plainly erred in imposing a contempt sanction given the state's failure to comply with the statutory requirement to file a certified copy of the restraining order.

We conclude that the state's failure to file a certified copy of the restraining order did not deprive the trial court of subject matter jurisdiction. And, even if the trial court plainly erred by enforcing the restraining order in the absence of a proper filing, we decline to exercise our discretion to correct the error. We therefore affirm.

The relevant facts are procedural and undisputed. The Curry County Circuit Court issued the restraining order, which prohibited defendant from engaging in certain conduct. *See* ORS 107.700 to 107.735 (governing FAPA restraining orders). The state later alleged that defendant committed acts in Josephine County which, if true, would violate that order. The state initiated punitive contempt proceedings in Josephine County as authorized by ORS 107.728, which provides:

"A [FAPA] petition * * * may be filed only in a county in which the petitioner or respondent resides. Any contempt

_____

[1] We recognize that ORS 107.728 was recently amended for the first time by Oregon Laws 2024, chapter 42, section 1 (effective March 27, 2024, and operative July 1, 2024). However, we analyze the question on appeal under the original version of the statute, which was enacted in 2003, and all subsequent references are to that original version of the statute.

> proceedings for violation of a [FAPA] restraining order * * * must be conducted by the court that issued the order, or by the circuit court for a county in which a violation of the restraining order occurs. If contempt proceedings are initiated in the circuit court for a county in which a violation of the restraining order occurs, the person initiating the contempt proceedings shall file with the court a copy of the restraining order, certified by the clerk of the court that issued the order. Upon filing of the certified copy of the restraining order, the court shall enforce the order as though that court had issued the order."

Despite the statutory language that required the state, as the "person initiating the contempt proceedings," to file a certified copy of the restraining order, the state did not do so. It did, however, offer a copy of the restraining order as an exhibit at trial, and that exhibit was received without objection. The trial court found defendant in contempt and imposed a punitive sanction. This appeal followed.

We turn to defendant's first argument in which he claims that Josephine County Circuit Court lacked subject matter judication to enforce another court's restraining order.[2] We review that question for legal error. *Wallace v. State ex rel PERB*, 245 Or App 16, 18, 263 P3d 1020 (2011).

"Subject matter jurisdiction relates to the type of case over which a court has authority to exercise judicial powers." *Menten and Deatherage*, 302 Or App 425, 427, 461 P3d 1075 (2020). "Oregon courts have subject matter jurisdiction over disputes if the constitution, a statute, or the common law tells them to do something about the specific kind of dispute presented." *Mount Hood Community College v. Federal Ins. Co.*, 199 Or App 146, 152, 111 P3d 752 (2005).

In the context of contempt, every court has the inherent authority to enforce its own orders by way of its contempt power. *See, e.g.*, *Ex parte Robinson*, 86 US 505, 510, 22 L Ed 205 (1873) ("The power to punish for contempts is inherent

---

[2] Although defendant raised this issue for the first time on appeal, he was not required to preserve it below because it involves a challenge to subject matter jurisdiction. *See Multnomah County Sheriff's Office v. Edwards*, 361 Or 761, 777, 399 P3d 969 (2017) ("[T]he ordinary rule requiring preservation of claims of error does not apply when the claim is that a lower court lacked 'subject-matter jurisdiction.'").

in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments and orders * * * of the courts, and consequently to the due administration of justice."); *Bachman v. Bachman*, 171 Or App 665, 672, 16 P3d 1185 (2000), *rev den*, 332 Or 305 (2001) ("[A] contempt proceeding is neither civil nor criminal. Instead, it is a unique and inherent power of a court to ensure compliance with its orders."); ORS 33.025(1) ("The power of a court to impose a remedial or punitive sanction for contempt of court is an inherent judicial power.").

But that general rule does not answer the question presented in this case—whether one court has subject matter jurisdiction to use its inherent contempt power to ensure compliance with an order issued by a different court. The parties vigorously dispute the answer to that complex question. However, we do not need to conclusively resolve it. The legislature has the power to define the circuit courts' subject matter jurisdiction, and it did so by enacting ORS 107.728, which expressly permits contempt proceedings on FAPA restraining orders to occur in *both* the circuit court of the county that issued the order and the "circuit court for a county in which a violation of the restraining order occurs." Thus, the legislature has vested subject matter jurisdiction and contempt authority in two courts.

While acknowledging that the statute confers subject matter jurisdiction in two courts, defendant argues that the statute makes subject matter jurisdiction contingent upon strict compliance with its provisions. Specifically, he asserts that the statute's filing requirement (*i.e.*, that the party initiating the case "file with the court a certified copy of the restraining order") is a prerequisite to subject matter jurisdiction when the order is enforced in a court other than the one that issued it. Defendant asserts that the state's failure to strictly comply with that statutory requirement means that the Josephine County Circuit Court never had subject matter jurisdiction in this case.

Whether the filing requirement is a prerequisite to subject matter jurisdiction is a question of legislative intent, which we answer "by examining the statutory text, in context, and, where appropriate, legislative history and relevant

canons of construction." *State v. Smith*, 330 Or App 397, 400, 543 P3d 1258 (2024) (internal quotation marks omitted); *accord Scott v. Dept. of Rev.*, 358 Or 795, 805, 370 P3d 844 (2016) ("Statutory requirements related to court procedures are jurisdictional if the legislature intended them to be, and we generally look at the purpose of a statute to determine whether the legislature intended compliance with a statutory provision to be a jurisdictional requirement." (Citations omitted.)).

We start with the statutory text. The second sentence of the statute provides that a contempt proceeding may be brought in either of two courts: "Any contempt proceedings for violation of a [FAPA] restraining order *** must be conducted by the court that issued the order, *or* by the circuit court for a county in which a violation of the restraining order occurs." ORS 107.728 (emphasis added). That concurrent authority is given to the non-issuing court based solely on the allegation that the restraining order was violated within its geographic boundary. That the grant of authority does not hinge on any other condition suggests that the filing requirement that follows is not a prerequisite to subject matter jurisdiction.

The next sentence of the statute contains the filing requirement itself: "If contempt proceedings are initiated in the circuit court for a county in which a violation of the restraining order occurs, the person initiating the contempt proceedings shall file with the court a copy of the restraining order, certified by the clerk of the court that issued the order." ORS 107.728. Initiation of contempt proceedings is a distinct event from the filing of the certified copy of the restraining order—for it is only "[i]f contempt proceedings are initiated" that the filing requirement arises. The certified copy need not be filed concurrently with the initiating document. In fact, there is no explicit deadline for filing the certified copy at all. Had the legislature intended to make the filing a jurisdictional requirement, it seems more likely that the statutory text would have explicitly required that the certified copy of the restraining order accompany the initiating document or be filed within a date certain thereafter.

However, a purely text-based statutory analysis is complicated by the final sentence of the statute: "Upon filing of the certified copy of the restraining order, the court shall enforce the order as though that court had issued the order." ORS 107.728. That sentence can fairly be read in two ways. On the one hand, it can be read to establish that the non-issuing court's power to enforce another court's restraining order depends upon the filing of a certified copy of that order.[3] On the other hand, it can be read as a directive from the legislature, which requires a non-issuing court to enforce an out-of-circuit order; in other words, enforcement is mandatory, not discretionary. Because the text of ORS 107.728 cuts both ways and does not provide a clear answer, we turn next to its legislative history to assist us in determining the legislature's intent.

Although there is no direct mention of the filing requirement or subject matter jurisdiction, the legislative history does provide insight as to the purpose of ORS 107.728. The purpose of the statute is important to the question at hand because, as the Supreme Court has explained, "[W]e generally look at the purpose of a statute to determine whether the legislature intended compliance with a statutory provision to be a jurisdictional requirement." *Scott*, 358 Or at 805. We weigh the degree to which making a statutory requirement a *jurisdictional* prerequisite serves that underlying purpose. *See Hood River County v. Dabney*, 246 Or 14, 22, 423 P2d 954 (1967) (concluding that statutory requirements were not jurisdictional requirements unless they were necessary for due process because such a construction aligned with the legislature's balancing of two opposing

---

[3] Of course, even if this reading is the correct one, and the legislature intended that the trial court's authority to enforce a FAPA restraining order depends upon the filing of a copy of that order, that does not necessarily mean that it is a matter of subject matter jurisdiction. Our cases recognize that there are two "classes" of statutory requirements:

"The first class limits subject matter jurisdiction and affects the jurisdiction of a particular court to preside over a *** proceeding. The second class consists of limits on a court's ability to take particular actions once it properly acquires subject matter jurisdiction. Those limits are not 'jurisdictional,' but are simply statutory limits on the court's authority."

*Magar v. City of Portland*, 179 Or App 104, 108, 39 P3d 234 (2002) (emphasis added; footnote omitted).

interests: the interest of taxpayers in receiving notice, and the interests of counties and purchasers in marketable title).

ORS 107.728 began as House Bill (HB) 2101 (2003). Proponents explained that the bill was in response to *Bachman*, 171 Or App 665. Testimony, House Committee on Judiciary, HB 2101, Mar 5, 2003, Ex F (statement of Jonathan H. Fussner). In that case, the victim obtained a FAPA order in Multnomah County and then moved to Washington County. *Bachman*, 171 Or App at 668. The defendant followed her there and violated the order by attempting to enter her residence. *Id.* He was prosecuted for contempt of court in Multnomah County. *Id.* at 668-69. In the trial court, the defendant filed a motion to dismiss for improper venue, which the court denied. *Id.* at 669. On appeal, we held that venue was a rather inapposite concept in a contempt proceeding: "[I]t is not relevant in this case *where* the order was violated, but that it *was* violated. The court that issued the order—the Multnomah County Circuit Court—retained the inherent power to enforce its order by imposing sanctions." *Id.* at 674.

Although *Bachman* did not address whether one court could enforce by contempt another court's order, the proponents of HB 2101 were concerned that *Bachman* created doubt in that area. Thus, the bill was intended to clarify that FAPA orders could be enforced in the county where the order was violated. As a Department of Justice attorney summarized,

> "I think that the intent of this bill is largely to give more flexibility to the system so that in situations * * * where it might not be absolutely clear where you would bring them, the court system and the prosecutors will have the opportunity to choose the one that makes the most sense."

Tape Recording, House Committee on Judiciary, HB 2101, Mar 5, 2003, Tape 67, Side A (statement of Jonathan H. Fussner). That "flexibility" would make enforcement of FAPA orders easier on victims of abuse because they could seek enforcement in their local court rather than returning to a distant county where the FAPA order may have been initially issued. *Id.* In one exhibit submitted to the legislature, a Coos County resident pointed out that 18 USC

section 2265[4] made restraining orders enforceable nation-wide. Testimony, House Committee on Judiciary, HB 2101, Mar 5, 2003, Ex G (statement of Laura Bruce). The Coos County resident thus explained, "[w]hile the FAPA restraining orders can be enforced in any of 49 other U.S. states, it makes no sense that the same protection is not afforded county to county in Oregon." *Id.*

Again, "we generally look at the purpose of a statute to determine whether the legislature intended compliance with a statutory provision to be a jurisdictional require-ment." *Scott*, 358 Or at 805. To that end, we observe that the underlying purpose of the bill is clear: to make it easier for persons protected by restraining orders to seek enforcement of the orders close to home, rather than requiring them to return to the issuing court. We can see no way in which that purpose is furthered by treating the requirement to file a certified copy of the order as a jurisdictional requirement.

Of course, that is not to say that the requirement to file a certified copy of the restraining order does not serve important functions. Indeed, the certified copy of the restraining order provides notice to both the defendant and the enforcing court as to the exact order being enforced and the precise terms the defendant is alleged to have violated. It also helps to ensure that the trial court is enforcing the most up-to-date and controlling order. Nonetheless, those functions go more to the question of whether the case can

---

[4]  18 USC § 2265(a) provides:

"(a) Full Faith and Credit.—Any protection order issued that is consis-tent with subsection (b) of this section by the court of one State, Indian tribe, or territory (the issuing State, Indian tribe, or territory) shall be accorded full faith and credit by the court of another State, Indian tribe, or territory (the enforcing State, Indian tribe, or territory) and enforced by the court and law enforcement personnel of the other State, Indian tribal government or Territory as if it were the order of the enforcing State or tribe."

(Footnote omitted.) That federal directive is implemented by ORS 24.190.

Although not directly relevant to our analysis here, we note that it remains on open question whether the statutory prerequisites to enforcement found in ORS 24.190 are necessary to establish subject matter jurisdiction. *See State v. Merritt*, 318 Or App 7, 14-15, 506 P3d 465 (2022) ("[C]oncluding that the require-ments of ORS 24.190 ordinarily must be satisfied for an Oregon court to enforce a foreign restraining order," and explaining, "we do not determine—because we need not do so in this case—whether the requirements are one of subject matter jurisdiction or, instead, are requirements that may be waived by the party sub-ject to the enforcement action.").

go forward and what should be the appropriate disposition, rather than whether the court has jurisdiction to hear the case in the first instance. *See Scott*, 358 Or at 801 (recognizing that the mere fact that "compliance with a statutory requirement is obligatory (*i.e.*, legally required) says little about whether" the requirement is a jurisdictional one).

Considering the text and legislative history of ORS 107.728, we conclude that the legislature did not intend the requirement to file a certified copy of the restraining order to be jurisdictional. The plain text of the statute appears to grant subject matter jurisdiction based only upon the geographical location of the alleged violation, and the filing requirement arises only after the contempt proceeding has been initiated and has no specified deadline. The purpose of the statute is to make enforcement of FAPA orders more accessible to those protected by the orders, and making a filing requirement a *jurisdictional* requirement does not further that purpose. Therefore, we conclude that the state's failure to file a certified copy of the restraining order did not deprive the Josephine County Circuit Court of subject matter jurisdiction in this case.

We turn to defendant's second argument, in which he asserts that the trial court erred when it enforced the restraining order without a proper filing of a certified copy of the Curry County order. Defendant acknowledges that this claim is unpreserved, so our review is for plain error. *See* ORAP 5.45(1), (4)(b), (7). Plain error review is a two-step process. We must first determine that the error is plain, which means that it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If those three elements are met, we must then determine whether to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

We do not need to conclusively decide whether the court plainly erred. Even assuming it did, we decline to exercise our discretion to correct the error. When we determine whether to correct plain error, we consider factors "such as the competing interests of the parties, the nature

of the case, the gravity of the error, and the ends of justice in the particular case." *Vanornum*, 354 Or at 630. Here, those factors weigh against correcting the error.

First, based on the nature of the case, the gravity of the error was minimal because, although the state failed to properly file a copy of the Curry County restraining order, a copy was admitted as evidence at trial and without objection. Defendant did not object to the state's failure to properly file a copy of the order and voiced no concerns about a lack of notice or the validity of the order itself. Second, the competing interests of the parties and the ends of justice weigh against correction. On this record, there is no basis to believe that the error affected the evidence produced, defendant's litigation strategy, or any of the factual findings made by the trial court. Finally, had the issue been preserved below, it is likely that the error could have been easily remedied or avoided altogether. In short, on this record, we find no indication that defendant was meaningfully prejudiced by the state's failure to comply with the filing requirement.

Affirmed.