**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RIGOBERTO AGUILAR-TURCIOS,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 06-73451

Agency No.
A045-301-132

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 7, 2007—Pasadena, California

Filed September 29, 2009

Before: Thomas G. Nelson, Richard A. Paez and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Thomas G. Nelson;
Dissent by Judge Bybee

13931

**COUNSEL**

David B. Landry, San Diego, California, for the petitioner.

Siu P. Wong and Greg D. Mack, Department of Justice, Washington, D.C., for the respondent.

**OPINION**

T.G. NELSON, Circuit Judge:

Rigoberto Aguilar-Turcios ("Aguilar"), a native and citizen of Honduras and a lawful permanent resident alien of the United States, petitions for review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from an Immigration Judge's ("IJ") order finding him removable as an alien convicted of an aggravated felony. We have jurisdiction under 8 U.S.C. § 1252. We review de novo whether Aguilar has been convicted of an aggravated felony within the meaning of federal law. *See Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005). We hold that Aguilar was not convicted of an aggravated felony and accordingly grant the petition for review.

## I.

Aguilar was admitted to the United States as a lawful permanent resident in 1996. In June 2000, Aguilar joined the United States Marine Corps. While in the Marine Corps, he used a government computer to access pornographic internet sites. In 2003, he pled guilty to and was convicted by special court-martial of violating Article 92 of the Uniform Code of Military Justice ("U.C.M.J.").[1]

Article 92 requires that an individual subject to the U.C.M.J. comply with any "lawful general order." *See* U.C.M.J., Art. 92, found at 10 U.S.C. § 892. The "lawful general order" Aguilar violated in connection with his Article 92 conviction provides that government computers "shall be for official use and authorized purposes only" and that such "authorized purposes" may not include "uses involving pornography." *See* Department of Defense Directive 5500.7-R, Section 2-301(a).

In September 2005, the government initiated removal proceedings against Aguilar, charging him with being a noncitizen subject to removal because he had been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(I).

After holding a hearing on the charges of removability, the IJ held that Aguilar's conviction under Article 92 was an aggravated felony as described in 18 U.S.C. § 2252(a)(2) and (a)(4). The IJ therefore ordered Aguilar removed from the

---

[1]Aguilar also pled guilty to and was convicted by special court-martial of violating Article 134 of the U.C.M.J. by using two different computer hard drives, including the hard drive of the computer used in connection with his Article 92 conviction, to wrongfully and knowingly possess visual depictions of minors engaging in sexually explicit conduct. Because the IJ held that Aguilar's conviction under Article 134 was not an aggravated felony, and the government did not appeal that determination, we address only whether the Article 92 conviction constitutes an aggravated felony.

United States to Honduras as a non-citizen convicted of an aggravated felony.

Aguilar appealed to the BIA. The BIA applied the modified categorical approach and held that Aguilar's conviction under Article 92 was an aggravated felony:

> Under the modified categorical approach, the respondent's Article 92 conviction is an aggravated felony. The government computer identified as having been used by the respondent on specific dates to obtain access to pornographic Internet sites was identified as the same computer employed by him to wrongfully and knowingly possess, on the same dates, visual depictions of minors engaging in sexually explicit conduct. Therefore, we conclude that the DHS has proven by clear and convincing evidence that the respondent is removable as an alien convicted of an aggravated felony.

The BIA therefore affirmed the IJ's decision and dismissed Aguilar's appeal. Aguilar is before this court on a petition for review of the BIA's decision.

## II.

### A.   *The Categorical Approach*

To determine whether Aguilar's conviction under Article 92 is an aggravated felony, we apply the analytical approach outlined in *Taylor v. United States*, 495 U.S. 575, 600-02 (1990). *See Parrilla*, 414 at 1042. This approach requires us to make a categorical comparison of the elements of the statute of conviction and the generic definition of the aggravated felony, "and decide whether the conduct proscribed by [the statute of conviction] is broader than, and so does not categorically fall within, this generic definition." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1067-68 (9th Cir. 2007) (*en banc*)

(quotations omitted). In making this categorical comparison, we may not consider the specific conduct that resulted in the conviction or the circumstances under which the crime was committed. *Id.* at 1070. We must look only to the elements of the statute of conviction. *See id.*

**[1]** A conviction is a "categorical" aggravated felony if a violation of the statute of conviction would *necessarily* also be a violation of the generic aggravated felony statute. *See id.* at 1072. If, on the other hand, a violation of the statute of conviction would not *necessarily* be a violation of the generic aggravated felony statute, the conviction is not a categorical aggravated felony. *See id.* at 1072-73.

**[2]** Here, the generic aggravated felonies with which we compare Aguilar's conviction are found at subsections (a)(2) and (a)(4) of 18 U.S.C. § 2252. A violation of either of these subsections requires conduct involving a visual depiction of a minor engaging in sexually explicit conduct. *See* 18 U.S.C. § 2252(a)(2) (making it unlawful to knowingly receive, distribute, or reproduce for distribution any visual depiction if "(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct"); 18 U.S.C. § 2252(a)(4) (making it unlawful to knowingly possess "matter which contain[s] any visual depiction" if "(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct").

**[3]** Aguilar's Article 92 conviction is thus a categorical aggravated felony only if a conviction for violating Article 92 *necessarily* involves a depiction of a minor engaging in sexually explicit conduct. *See Navarro-Lopez*, 503 F.3d at 1072-73.

To be convicted of violating Article 92 , an individual must have engaged in conduct that:

(1) violates or fails to obey any lawful general order or regulation;

(2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or

(3) is derelict in the performance of his duties . . . .

U.C.M.J., Art. 92, found at 10 U.S.C. § 892. It is undisputed that a conviction for violating Article 92 does not *necessarily* involve a depiction of a minor engaging in sexually explicit conduct. *See id.*

[4] Aguilar was convicted of violating Article 92 by violating or failing to obey a "lawful general order." The "lawful general order" that Aguilar violated in connection with his Article 92 conviction is found at section 2-301(a) of Department of Defense Directive 5500.7-R.[2] Section 2-301(a) prohibits the use of government computers except for "official use and authorized purposes," and section 2-301(a)(2)(d) provides that military agencies may not authorize uses of government computers "that would reflect adversely on DoD or the DoD Component (such as uses involving pornography; chain letters; unofficial advertising, soliciting or selling except on authorized bulletin boards established for such use; violations of statute or regulation; inappropriately handled classified information; and other uses that are incompatible with public service)." Department of Defense Directive 5500.7-R, Section 2-301(a)(2)(d).

[5] Although a violation of section 2-301(a) may involve "pornography," a violation does not *necessarily* involve por-

---

[2]Because it does not change the outcome in this case, we assume, without deciding, that the elements of this lawful general order can be considered in determining whether Aguilar's Article 92 conviction is a categorical aggravated felony.

nography, nor does it *necessarily* involve a depiction of a minor engaging in sexually explicit conduct.

**[6]** Because a violation of Article 92 through violating section 2-301(a) does not necessarily involve a visual depiction of a minor engaging in sexually explicit conduct, Aguilar's Article 92 conviction is not a categorical aggravated felony.[3] *See Navarro-Lopez*, 503 F.3d at 1072-73.

B. *The Modified Categorical Approach*

In the absence of a categorical match, we typically would next apply the "modified categorical approach" under which we would consider whether certain documents in the record or judicially noticeable facts show that Aguilar's conviction under Article 92 constituted an aggravated felony. *See United States v. Aguila-Montes de Oca*, 553 F.3d 1229, 1233 (9th Cir. 2009); 18 U.S.C. § 2252(a)(2), (4).

**[7]** The modified categorical approach may only be applied, however, if the elements of the crime of conviction are broader than the generic crime. *Navarro-Lopez*, 503 F.3d at 1073. To put it another way, the modified categorical approach applies only if the statute of conviction is divisible into several crimes, some of which involve an aggravated felony and some of which do not. *Id.*

On the other hand, if "the crime of conviction is missing an element of the generic crime altogether, we can never find that 'a jury was actually required to find all the elements of' the generic crime," and the modified categorical approach

---

[3]The U.S. Supreme Court's recent decision in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), does not affect our resolution of this case because it is clear from the statutory language that the requirement at issue here—a visual depiction of a minor engaging in sexually explicit conduct, *see* 18 U.S.C. § 2252(a)(2), (4)—is an element of the generic crimes and not simply a description of the specific circumstances under which the crimes were committed. *See Nijhawan*, 129 S. Ct. at 2303.

does not apply. *Id.* (citation omitted). In other words, if the crime of conviction lacks an element of the generic crime, the "crime of conviction can never be narrowed to conform to the generic crime because the jury is not required — as *Taylor* mandates — to find all the elements of the generic crime." *Id.* This is true even if a petitioner has admitted to the missing elements because such admissions cannot "be used to modify the crime because they were not necessary for a conviction." *Id.*

**[8]** Here, section 2-301(a) prohibits uses involving "pornography." *See* Department of Defense Directive 5500.7-R, Section 2-301(a). Neither Article 92 nor section 2-301(a), however, requires that the "pornography" involve a visual depiction of a minor engaging in sexually explicit conduct. Article 92 and section 2-301(a) are thus "missing an element of the generic crime altogether"—a visual depiction of a minor engaging in sexually explicit conduct.[4] The modified

---

[4]The dissent argues that the crime of conviction is not "missing" the element of child pornography but instead is simply "broader" than the generic crimes because "child pornography" is simply a subset of "pornography." The dissent further argues that "there is no logical distinction between 'broader' and 'missing' elements—they are two sides of the same coin." In making this argument, the dissent misconstrues the meaning of "broader."

A statute of conviction is "broader" than the generic crime if the statute of conviction is divisible into several crimes, some of which would qualify as a generic crime, some of which would not. *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1159-60 (9th Cir. 2008). If a statute of conviction is "broader" than the generic crime, the court may proceed to the modified categorical approach to determine which of the divisible crimes the defendant was convicted and whether that specific crime qualifies as an aggravated felony. *See id.*

In contrast, a statute of conviction—even one that is divisible into several crimes—is "missing" an element of a generic crime if a jury could convict a defendant of each of the divisible crimes without actually being required to find all the elements of the generic crime. *See id.* at 1160. If a statute of conviction, including all the divisible crimes it encompasses,

categorical approach does not, therefore, apply and cannot be used in an attempt to "conform" Aguilar's conviction to match the generic crimes. *See Navarro-Lopez*, 503 F.3d at 1073. This is true even if Aguilar had admitted that the pornography he accessed in relation to his Article 92 and section 2-301(a) conviction involved a visual depiction of a minor engaging in sexually explicit conduct. *See id.*

## III.

[9] We hold that Aguilar's conviction for violating Article 92 of the U.C.M.J. is not an aggravated felony. Aguilar is not, therefore, deportable as an alien convicted of an aggravated felony. Accordingly, we grant the petition for review and remand to the BIA with instructions to terminate the proceedings and order the government to release Aguilar.[5]

---

is "missing" altogether an element of the generic crime, "the modified categorical approach cannot be used to conform [the defendant's] conviction to the generic definition of [the aggravated felony]." *Id.*

Here, Aguilar was convicted of violating Article 92 by violating section 2-301(a). Section 2-301(a) is a divisible regulation that includes, as one of its divisible crimes, a prohibition on uses involving "pornography." *See* Department of Defense Directive 5500.7-R, Section 2-301(a). Section 2-301(a) is not merely "broader" than the generic crimes at issue here because the fact finder could convict Aguilar of the divisible crime of a use involving "pornography" without actually being required to find that Aguilar's use involved a visual depiction of a minor engaging in sexually explicit conduct, i.e., "child pornography." *See Estrada-Espinoza*, 546 F.3d at 1160. Rather, section 2-301(a) is "missing" altogether an element of the generic crimes because the fact finder could convict Aguilar of each of the divisible crimes under section 2-301(a)—including the crime of a use involving "pornography"—without actually finding that his use involved "child pornography." The modified categorical approach cannot, therefore, be used to "conform" Aguilar's conviction to the generic crimes. *See id.*

[5]While this appeal was pending and this court's order staying removal was in place, the government mistakenly removed Aguilar to Honduras. To date, efforts by the government and Aguilar's counsel to locate and return Aguilar to the United States have been unsuccessful.

PETITION FOR REVIEW GRANTED; REMANDED.

---

BYBEE, Circuit Judge, dissenting:

No one disputes that Rigoberto Aguilar-Turcios accessed pornographic websites on a government computer while on duty in the Marine Corps. No one disputes that from those pornographic websites, Aguilar-Turcios downloaded at least six visual depictions of children under the age of eighteen engaged in sexually explicit conduct. And no one disputes that a conviction for possession of child pornography is a statutory basis for removal. *See* 8 U.S.C. §§ 1101(a)(43)(I), 1227(a)(2)(A)(iii); 18 U.S.C. § 2252. Yet the majority holds that our current precedent concerning the categorical and modified categorical approach compels us to permit Aguilar-Turcios to remain in the United States.

The majority relies on our statement in *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc), that we can never apply the modified categorical approach "[w]hen the crime of conviction is missing an element of the generic crime altogether." *Id.* at 1073. I dissent from the majority's application of this statement to the facts of this case because Aguilar-Turcios certainly was convicted of a crime that contained all the necessary elements of 18 U.S.C. § 2252(a)(2), (4).

More importantly, I write to question our reliance on *Navarro-Lopez*'s broad claim that we may never look to the modified categorical approach where the statute is missing an element of the generic crime. With all due respect, I believe that adopting such a strict rule was ill-considered (to the extent that it was considered at all), unnecessary, and in conflict with our prior cases and the decisions of our sister circuits. As outlined below, I would adopt the flexible approach enumerated by the Supreme Court that simply analyzes

whether the factfinder necessarily found the defendant guilty of the requisite elements of the generic crime.

I

After entering the United States in 1996 and joining the United States Marine Corps four years later, Aguilar-Turcios began accessing pornographic websites on his computer workstation at the Marine Corps Air Station Miramar in San Diego. He specifically searched for and downloaded images of pre-teen girls engaged in sexually explicit activity. He saved some of the images onto disks for his personal use at home; he also borrowed a laptop from a friend on which he downloaded child pornography.

Aguilar-Turcios was charged before a court martial, in a single charging document, with two counts of violating the Uniform Code of Military Justice (UCMJ). The first count alleged a violation of Article 92 of the UCMJ, which requires members of the military to obey all lawful orders. Specifically, he was charged with violating a standing order that Department of Defense computers not be used in a manner that would reflect adversely on the military—including accessing pornography. The second count alleged a violation of Article 134 of the UCMJ (conduct unbecoming a Marine) for accessing and downloading images of minors engaged in sexually explicit activities. The charging document is pellucid on a critical fact: Aguilar-Turcios used the same computer, identified in the charging document by serial number and the relevant time period, to access the pornographic websites alleged in the Article 92 count and to download the child pornography alleged in the Article 134 count.

Aguilar-Turcios did not deny his salacious activities, and pled guilty to both charges in a single plea colloquy on May 20, 2003. The military judge presiding over the court martial carefully walked through all of the elements of both convictions, obtaining Aguilar-Turcios' admission to each element.

He explained that, to be found guilty of the Article 92 count, the prosecution would be required to prove that

> on diverse occasions, from on or about 1 November 2001 to on or about 18 July 2002, [Aguilar-Turcios] violated this regulation by wrongfully using a government computer, Fujitsu MPB3032AT (HD), serial number 03065335 (3.24gb), to obtain access to pornographic internet sites.

The military judge then explained that, to be found guilty of the Article 134 count, the prosecution would be required to prove

> that on diverse occasions from on or about 1 November 2001 to on or about 18 July 2002, on a government computer hard drive, Fujitsu MPB3032AT (HD), serial number 03065335 (3.24gb), [Aguilar-Turcios] wrongfully possessed visual depictions of minors engaging in sexually explicit conduct . . . that [Aguilar-Turcios] knew [he] possessed these depictions . . . [and] that the persons depicted in these depictions were minors.

The military judge defined a "minor" as an "individual that has not obtained the age of 18 years" and "sexually explicit conduct" as "conduct that is plainly or clearly involving sexual[ ] activity; the organs of sex; or the instincts, drive, or behavior associated with sexual activity." Aguilar-Turcios admitted each element of both charges.

During the plea colloquy, Aguilar-Turcios entered a stipulation of facts. In connection with the Article 92 charge, he stipulated:

> On divers[e] occasions, from on or about 1 November 2001, to on or about 18 July 2002, . . . Aguilar-turcios used the government computer in his

workspace . . . to knowingly and wrongfully obtain access to pornographic internet sites.

In connection with the Article 134 charge, he stipulated:

> Between on or about 1 November 2001 and on or about 18 July 2002, LCpl Aguilarturcios possessed six (6) visual depictions of minors engaging in sexually explicit conduct. LCpl Aguilarturcios found these images at pornographic internet sites. LCpl Aguilarturcios possessed these images on a government computer hard drive, Fujitsu MPB3032AT (HD), located in his workspace . . . .

The IJ found that the Article 92 conviction was an aggravated felony under the modified categorical analysis but that the Article 134 conviction was not,[1] and ordered Aguilar-Turcios removed from the United States. In response to Aguilar Turcios' appeal, the BIA affirmed the IJ's decision in a written opinion. The question before us is whether the Article 92 conviction, under either the categorical or modified categorical analysis, constitutes an aggravated felony as described in 18 U.S.C. § 2252.

## II

Under 8 U.S.C. § 1227, an alien is removable for committing an "aggravated felony" after entry into the United States. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes, among other things, offenses described in 18 U.S.C. § 2252, *see* 8 U.S.C. § 1101(a)(43)(I) (listing crimes relating to child pornography), two provisions of which are relevant here. First, it is an aggravated felony to "knowingly receive[ ] . . . any visual depiction that has been . . . transported in interstate or foreign commerce . . . by any means including by computer . . . if (A) the producing of such visual depiction

---

[1]The government did not appeal the IJ's Article 134 ruling.

involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct." *Id.* § 2252(a)(2). Second, it is an aggravated felony to "knowingly access[ ] with intent to view, . . . matter which contain[s] any visual depiction" while "on any land or building . . . under the control of the Government of the United States . . . if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct." *Id.* § 2252(a)(4). We must decide whether either or both of these provisions can form the basis for Aguilar-Turcios's removal.

## A

I begin my analysis with the categorical approach established in *Taylor v. United States*, 495 U.S. 575, 600-02 (1990). We cannot find that Aguilar-Turcios committed an aggravated felony as a categorical matter unless, after comparing the elements of the statute of conviction and the definition of the aggravated felony, we conclude that the entire range of conduct prohibited by the statute fits within the statutory definition of an aggravated felony. *See id.* at 602.

There is no question that Aguilar-Turcios' conviction would not constitute a removable offense under this inquiry. Aguilar-Turcios pled guilty to violations of two broad provisions of the UCMJ: one violation of Article 92 for violating a lawful general order, *see* 10 U.S.C. § 892, and one violation of Article 134 for conduct unbecoming a Marine, *see* 10 U.S.C. § 934. We analyze the Article 92 conviction as the only basis for removal because the government did not appeal the IJ's decision that the Article 134 conviction was not an aggravated felony.

Article 92 makes any member of the military who "violates or fails to obey any lawful general order or regulation" punishable by a court martial. 10 U.S.C. § 892(1). Aguilar-Turcios pled guilty to violating § 2-301(a)(2)(d) of Depart-

ment of Defense Directive 5500.7-R, which prohibits "put[ting] Federal Government communications systems to uses that would reflect adversely on DoD or the DoD Component (such as uses involving pornography; chain letters; unofficial advertising, . . . and other uses that are incompatible with public service)."[2]

The broad language of § 2-301(a)(2)(d) clearly encompasses conduct unrelated to possession of child pornography as defined in 18 U.S.C. § 2252(a)(2) or 2252(a)(4); thus, a violation of section 2-301(a)(2)(d) is not categorically an aggravated felony.

---

[2]The majority "assume[s], without deciding, that the elements of section 2-301(a)(2)(d) can be considered in determining whether Aguilar's Article 92 conviction is a categorical aggravated felony." Maj. Op. at 13938 n.2. I have no hesitation concluding that we may look to the elements of the lawful general order when applying the categorical and modified categorical analysis. The purpose of the UCMJ is to reconcile the need for a command structure in the military with the need for criminal law safeguards in administering military justice. *See* John S. Cooke, *Introduction: Fiftieth Anniversary of the Uniform Code of Military Justice Symposium Edition*, 165 MIL. L. REV. 1, 7-10 (2000). For that reason, the UCMJ shares many characteristics of the civilian criminal law system, and provides important procedural rights such as the right against self-incrimination and the right to assistance of counsel. *Id.* at 9-10. The UCMJ is thus best viewed as a parallel system of law enforcement, akin to a state criminal system.

The categorical and modified categorical analysis was designed to calibrate the disparate criminal laws in our federal system to the national criminal and immigration laws. Had Aguilar-Turcios pled guilty to a violation of California's child pornography statute, CAL. PENAL CODE § 311.11, the panel would have no reservations applying the categorical and modified categorical analysis to determine if § 311.11 was an aggravated felony. I see no principled difference between looking at the elements of the lawful general order underlying Aguilar-Turcios' convictions and looking at the elements of a state criminal statute. To conclude otherwise would be to render the immigration removal laws inapplicable to any alien subject to the UCMJ who is prosecuted for violating an order that would have been prosecuted as a removable crime had it occurred off the military base.

B

The *Taylor* Court recognized that there would be situations where "the sentencing court [may look] beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the generic crime]." *Taylor*, 495 U.S. at 602. The Supreme Court has extended that approach to cases, such as this, where the alien has pled guilty to the predicate crime. *See Shepard v. United States*, 544 U.S. 13, 20 (2005). The substantial (and at times confusing) body of law that has developed to define this "narrow range of cases" where a court can look "beyond the mere fact of conviction" has come to be known as the modified categorical analysis.

The modified categorical analysis applies, *inter alia*, in situations where a statute is divisible into several crimes, only some of which qualify as removable offenses. When the modified categorical analysis applies, we consult charging documents, signed plea agreements, jury instructions, guilty pleas, transcripts of plea proceedings, and judgment, and "comparable judicial record[s] of this information," *Shepard*, 544 U.S. at 26, to determine if the conduct for which the alien was actually convicted satisfies the definition of an aggravated felony. *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 888 (9th Cir. 2003); *see also Shepard*, 544 U.S. at 20-21; *Hernandez-Martinez v. Ashcroft*, 343 F.3d 1075, 1076 (9th Cir. 2003). Thus, in the present case I would examine these documents to determine "whether a plea of guilty to [the Article 92 conviction] necessarily admitted [the] elements of the [aggravated felony]." *Shepard*, 544 U.S. at 26.

The majority, however, concludes that it cannot apply the modified categorical analysis because "the crime of conviction lacks an element of the generic crime." Maj. Op. at 13940. Specifically, the majority finds that the Article 92 conviction lacks an element required by 18 U.S.C. § 2252, namely proof that the pornography accessed by Aguilar-

Turcios contained "a visual depiction of a minor engaging in sexually explicit conduct." Maj. Op. at 13940. For the general proposition that we cannot apply the modified categorical approach if "the crime of conviction is missing an element of the generic crime altogether" the majority, understandably, relies on our en banc decision in *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc), which in turn relied on a concurring opinion in *Li v. Ashcroft*, 389 F.3d 892 (9th Cir. 2004). I question the wisdom of our decision in *Navarro-Lopez*, and I disagree with the majority's decision to extend it.

## III

There is good reason to question whether the sparse discussion of the modified categorical analysis in *Navarro-Lopez* was fully considered. *Navarro-Lopez* presented the question of whether a conviction under California Penal Code § 32 for accessory after the fact was a crime involving moral turpitude. *See* 503 F.3d at 1065. The case required us to address both the categorical and modified categorical analysis, but the vast bulk of the majority's opinion focused on the categorical approach. *See id.* at 1067-73. Indeed, only three paragraphs of the majority opinion are devoted to the modified categorical analysis, *see id.* at 1073, and the concurring and two dissenting opinions do not discuss this analysis at all. *See id.* at 1074-78 (Reinhardt, J., concurring); *id.* at 1079-84 (Tallman, J., dissenting); *id.* at 1084-86 (Bea, J., dissenting).

However, *Navarro-Lopez* proclaims, "When the crime of conviction is missing an element of the generic crime altogether, we can never find that a jury was actually required to find all the elements of the generic crime." 503 F.3d at 1073 (internal quotation marks omitted). *Navarro-Lopez* offers a single case as support—then-Judge Kozinski's concurring opinion in *Li*, 389 F.3d at 899-901—and then only in a citation modified by the parenthetical "providing examples." *Id.* That is the beginning and the end of our discussion.

The parenthetical notation "providing examples" is apparently a reference to two examples used in Chief Judge Kozinski's concurrence describing when the crime of conviction is "broader" than the removable crime: First, "when . . . particular elements in the [crime of conviction] are broader than their counterparts in the [removable crime]," and, second, "when the crime of conviction . . . is missing an element of the [removable crime] altogether." *Li*, 389 F.3d at 899 (Kozinski, J., concurring). Chief Judge Kozinski says that this first case is acceptable under *Taylor*, but argues that in the latter case, when the crime of conviction is missing an element of the removable crime, "we can never find that a jury was actually required to find all the elements of the generic crime." *Id.* (internal quotations removed).

Chief Judge Kozinski's approach in *Li* is subject to criticism on a variety of fronts: (1) it goes well beyond anything that the Supreme Court required in *Shepard* and *Taylor*; (2) it is entirely inconsistent with almost two decades of Ninth Circuit precedent (indeed, read literally, *Navarro-Lopez* conflicts with at least twenty-four of our published decisions) and goes beyond the approach taken by any of our sister circuits; (3) it has created a jurisprudence of false-starts, conflicting decisions, and confusion that neither our appellate panels nor district courts appear capable of keeping straight; and (4) it is no longer good law after *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009).

A

With due respect, I do not believe that Chief Judge Kozinski's reading in *Li* is required by the Supreme Court's decisions in *Taylor* and *Shepard*. The holdings in those cases do not mandate such a strict rule and the logic behind those cases indicates that such a rule does not even apply in the civil immigration context.

1

*Taylor* permits looking beyond the statutory elements of the removable crime "where a jury was actually required to find all the elements of [the removable offense]." 495 U.S. at 602. *Shepard*, which was decided after *Li*, makes it clear that in a guilty plea context this showing is satisfied when the judicial record demonstrates that "the plea had 'necessarily' rested on the fact identifying the [crime as a removable offense]." 544 U.S. at 21. The modified categorical analysis is concerned with determining whether the petitioner's *conviction* fits the generically defined crime, not whether the *elements* fit the defined crime.

To illustrate how the modified categorical analysis should work, consider Chief Judge Kozinski's first example in his *Li* concurrence:

> [S]uppose the generic crime requires that defendant have used a gun, while the crime of conviction can be committed with any kind of weapon. The government may then use the indictment and other documents in the record to prove that, because the jury convicted the defendant, it must have done so by finding that he used a gun—for instance, if that was the only way that element of the offense was charged in the indictment.

*Li*, 389 F.3d at 899 (Kozinski, J., concurring). This situation, in which the crime of conviction contains several possible elements, at least one of which satisfies the generic crime, is referred to as a "divisible statute." *See United States v. Gonzalez-Terrazas*, 529 F.3d 293, 297-98 (5th Cir. 2008); *Wala v. Mukasey*, 511 F.3d 102, 106-09 (2d Cir. 2008). If the indictment, jury instructions, or plea colloquy clearly establish that the only way the conviction could be sustained was to find that the defendant used a gun, *Taylor* and *Shepard* are satisfied. I agree; so far, so good.

But in my view, Chief Judge Kozinski's second example in *Li*—"when the generic crime requires use of a gun while the crime of conviction doesn't require a weapon at all," *Li*, 389 F.3d at 899 (Kozinski, J., concurring)—also satisfies *Taylor* and *Shepard*. Chief Judge Kozinski—and presumably, *Navarro-Lopez*—would hold that it does not. But, if the government, "us[ing] the indictment and other documents in the record [can] prove that, because the jury convicted the defendant, it must have done so by finding that he used a gun," *id.*, then the modified categorical approach should be fully satisfied, whether it was an express element in the statute of conviction or not.

Consider an example that has arisen repeatedly in our own jurisprudence. Suppose a defendant is charged with burglary, but the crime of conviction does not require one of the elements of the generic burglary crime: an unlawful entry. If the indictment, plea colloquy, or (in the event of a trial) jury instructions all make it clear that the defendant could not have been convicted of burglary *unless* the trier of fact concluded that the defendant entered unlawfully, the factfinder still *necessarily* found the requisite elements of the generic crime, and *Taylor* and *Shepard* are satisfied. *See, e.g.*, *United States v. Williams*, 47 F.3d 993, 995 (9th Cir. 1995) (applying modified categorical analysis where the defendant pled *nolo contendre* to entering "unlawfully" even though the statute did not contain unlawful entry as an element).

Indeed, the *Taylor* Court embraced both examples that Chief Judge Kozinski identified—divisible statutes and those lacking elements of the generic crime—including the example that I just provided. The Court noted that "[a] few States' burglary statutes . . . define burglary more broadly, *e.g.*, by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." *Taylor*, 495 U.S. at 599. Here, the Court acknowledged that some crimes of conviction would lack elements of their generic counterparts. The Court held,

nonetheless, that an offense constitutes the generic crime if the statutory definition "substantially corresponds" to the generic crime, or "the charging paper and jury instructions actually required the jury to find all the elements" of the generic crime. *Id.*

The approach in *Li*'s concurrence is not so flexible. If a conviction is missing an element of the generic crime, a court can never look beyond the terms of the statute—even if the defendant specifically acknowledges that element in his plea. This approach completely removes certain crimes from consideration in the immigration context. For example, in California, Idaho, and Nevada, burglary does not contain an unlawful entry requirement. CAL. PENAL CODE § 459; IDAHO CODE ANN. § 18-1401; NEV. REV. STAT. § 205.060. Regardless of the contents of the indictment, jury instructions, plea colloquy, or stipulated facts, it is now impossible to remove an alien based on a prior burglary conviction in these states. Indeed, *Navarro-Lopez* has already required this result with regard California's burglary statute. *See United States v. Aguila-Montes de Oca*, 553 F.3d 1229, 1234 (9th Cir. 2009) ("Even if we were to undertake a modified categorical approach, we could not narrow the California statute by amending it to include the restrictive elements of the Guidelines' generic offense—namely, that the entry must have been 'unlawful or unprivileged.' ").[3]

The result is that *Navarro-Lopez* makes an alien removable based more on geography than the conviction. Although an

---

[3]*Navarro-Lopez* has created a dramatic turnabout on this issue in our circuit. *Compare Aguila-Montes de Oca*, 553 F.3d at 1234, *and United States v. Sandon*, 302 Fed. Appx. 719, 720-21 (9th Cir. Dec. 5, 2008) (holding that the modified categorical approach cannot apply where the alien admitted his entry was unprivileged because Arizona does not require a showing of unprivileged entry), *with United States v. Franklin*, 235 F.3d 1165, 1169-72 (9th Cir. 2000) (applying the modified categorical approach prior to *Navarro-Lopez* to California Penal Code § 459, even though § 459 does not require proof of unlawful entry).

alien can never be removed for a burglary that takes place in California, Idaho, or Nevada, aliens convicted of burglary in Alaska, Arizona, Hawaii, Oregon, Montana, and Washington, based on the same indictment, jury instructions, plea colloquy, or stipulated facts, face the possibility of removal because the statutes in these states contain an unlawful entry requirement. ALASKA STAT. §§ 11.46.310, .300; ARIZ. REV. STAT. ANN. §§ 13-1502 to -1504l; HAW. REV. STAT. §§ 708-810, -811; OR. REV. STAT. §§ 164.215, .225; MONT. CODE. ANN. § 45-6-204; WASH. REV. CODE §§ 9A.52.020, .025, .030. This is precisely the "odd result" that the Supreme Court sought to avoid in *Taylor*. 495 U.S. at 591 (finding it "odd" that "a person imprudent enough to [commit a crime] in California" would face immigration consequences "yet a person who did so in Michigan might not").

I therefore disagree with the analysis of the second example in the *Li* concurrence. Instead, a better approach would be to follow directly the Supreme Court's guidance in *Shepard* and *Taylor*: The appropriate question is whether the trier of fact " 'was actually required to find all elements of' the generic offense" to support the conviction, *see Shepard*, 544 U.S. at 17 (quoting *Taylor*, 495 U.S. at 602), *not* whether "the crime of conviction is broader because it is missing an element of the generic crime altogether." *Li*, 389 F.3d at 899 (Kozinski, J., concurring). In other words, given the allegations in the charging document, the instructions given to the jury or, in the case of a plea, the admissions in the plea colloquy or plea agreement, must the trier of fact necessarily have found that the petitioner committed all the elements of the removable offense in order to convict? If the answer to that question is "yes," the modified categorical analysis is satisfied. *Shepard*, 544 U.S. at 17; *Taylor*, 495 U.S. at 602.

2

A more flexible analysis is all the more appropriate in the present case because the reasons for adopting a strict reading

of the *Taylor* categorical and modified categorical analysis in the criminal context are not implicated in civil removal proceedings. I divide these concerns into two categories: statutory and constitutional.

First, a statutory concern arises because Congress has only made aliens removable for actual *convictions* of certain crimes, not for having engaged in certain *elements*. *See, e.g.*, 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien *who is convicted* of an aggravated felony at any time after admission is deportable." (emphasis added)); *see also Taylor*, 495 U.S. at 600 ("[T]he language of § 924(e) generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions."). This method of interpreting the statutory language is motivated by a concern for "the practical difficulties and potential unfairness" of inquiring into the facts of each individual conviction, *Taylor*, 495 U.S. at 601, and to avoid what would basically be a retrial of the conviction, *see id.* at 601-02.

But that concern is not present in this case. There is no need to retry the facts of the conviction here because the plea colloquy, charging document, and stipulations of fact are undisputed in the record before us. Indeed, as I have argued above, the Supreme Court's recognition of the possibility that a "court [may] go beyond the mere fact of conviction in a narrow range of cases where a [factfinder] was actually required to find all the elements of [the removable crime]," *Taylor*, 495 U.S. at 602, squarely fits this case.

The constitutional concerns that motivated the development of the modified categorical approach in *Taylor* are also not present here. The categorical/modified categorical analysis developed in criminal cases, where concerns raised in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), are front and center. *See, e.g.*, *Shepard*, 544 U.S. at 24-26 (discussing

potential *Apprendi* problems if a sentencing court were to consider non-jury found facts in connection with a sentencing enhancement under the Armed Career Criminal Act); *id.* at 26-28 (Thomas, J., concurring in part and concurring in the judgment) (arguing that the *Taylor* categorical approach violates the Sixth Amendment); *Taylor*, 495 U.S. at 601 ("If the sentencing court were to conclude, from its own review of the record, that the defendant actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial?").

This is not a criminal case in which Aguilar-Turcios might be subject to increased criminal penalties on the basis of judge-found facts, because an alien facing removal is not entitled to a jury trial to determine whether he is removable. Furthermore, the standard of proof for establishing that an alien is removable is lower than the standard of proof required for a criminal conviction. *See* 8 U.S.C. § 1229a(c)(3)(A) (establishing that the government has the burden to prove an alien is removable by "clear and convincing evidence").[4]

This case illustrates precisely why a more flexible approach to the modified categorical analysis should be permitted in this context. There is no doubt that Aguilar-Turcios is an alien, that he knowingly possessed images depicting a minor engaging in sexually explicit conduct, that those images required a minor actually to engage in sexually explicit conduct, that he was convicted under the UCMJ for that crime,

---

[4]In fact, the First Circuit has criticized us for applying our "modified categorical approach" too strictly in the immigration context. *See Conteh v. Gonzalez*, 461 F.3d 45, 54-55 (1st Cir. 2006) (noting that the constitutional concerns motivating the categorical analysis in *Shepard* and *Taylor* are not present in civil immigration proceedings, that the BIA "favor[s] a less restrictive form of the categorical approach in cases other than those controlled by Ninth Circuit precedent," and that the Ninth Circuit's form of the modified categorical analysis "impermissibly elevates the government's burden in civil removal proceedings . . . to proof beyond a reasonable doubt.").

and that aliens convicted of knowing possession of child pornography are removable. Finding otherwise requires a significant indulgence of the "legal imagination." *See Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 822 (2007); *cf. James v. United States*, 550 U.S. 192, 207-08 (2002) ("One could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone . . . . But ACCA does not require metaphysical certainty."). If the concern motivating the entire categorical/modified categorical exercise is that courts must be certain of the conduct that an alien committed before imposing the punishment of removal on him, then we need not be worried here that we are removing an alien unjustly.

## B

The rule announced in *Navarro-Lopez* also conflicts with almost twenty years of Ninth Circuit jurisprudence.[5] In fact,

(Text continued on page 13959)

---

[5]*See, e.g.*, *Carillo-Jaime v. Holder*, 572 F.3d 747 (9th Cir. 2009) (applying the modified categorical approach even though the California fraud statute does not require a showing that property was taken "without consent," the second element of the generic "theft offense" described at 8 U.S.C. § 1101(a)(43)(G)); *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 862-63 (9th Cir. 2008) (applying the modified categorical approach even though the crime of conviction, 18 U.S.C. § 751, did not contain two elements of an obstruction of justice charge); *United States v. Almazan-Becerra*, 537 F.3d 1094, 1096-98 (9th Cir. 2008) (applying the modified categorical approach to determine if California Health and Safety Code § 11360(a) constitutes a drug trafficking offense, even though § 11360(a) does not contain the necessary intent element for a drug trafficking offense); *Kharana v. Gonzales*, 487 F.3d 1280, 1283-84 (9th Cir. 2007) (using the modified categorical analysis to determine whether the California fraud statute, which does not specify an amount of loss, met the $10,000 loss requirement of 8 U.S.C. § 1101(a)(43)(M)(i)); *United States v. Nobriga*, 474 F.3d 561, 564 (9th Cir. 2006) (applying modified categorical approach to determine whether conviction involved a "violent use of force" because the statute of the crime of conviction did not require it); *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1167-68 (9th Cir. 2006) (turning to the modified categorical analysis even though the Arizona's

misdemeanor assault offense lacked two elements required for a crime of moral turpitude); *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1060-62 (9th Cir. 2006) (applying the modified categorical approach to determine whether an alien committed a crime of moral turpitude, even though the California battery statute lacked the necessary injury element); *Valencia v. Gonzales*, 439 F.3d 1046, 1051-54 (9th Cir. 2006) (using the modified categorical approach to determine whether statutory rape was a crime of violence, even though statutory rape under California law did not require a showing of non-consent); *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1196-97 & n.3 (9th Cir. 2006) (applying modified categorical approach to determine whether the defendant committed a crime of violence when he pled guilty to burglary in California even though burglary does not include use of physical force as an element); *United States v. Hernandez-Hernandez*, 431 F.3d 1212, 1217 (9th Cir. 2005) (applying modified categorical approach to determine if California false imprisonment statute is a crime of violence, even though false imprisonment does not require use of physical force as an element); *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 857-58 (9th Cir. 2005) (finding that a conviction for first degree residential burglary under California Penal Code § 459 was a crime of violence even though § 459 does not require a showing of unlawful entry); *United States v. Smith*, 390 F.3d 661, 664 (9th Cir. 2004) (same); *Ferreira v. Ashcroft*, 390 F.3d 1091, 1096, 1098 (9th Cir. 2004) (applying the modified categorical approach to determine if a conviction under a California fraud statute involved a loss exceeding $10,000, as required under 8 U.S.C. § 1101(a)(43)(M)(i), even though the statute only required a $400 loss); *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002) (same); *United States v. Velasco-Medina*, 305 F.3d 839, 851-52 (9th Cir. 2002) (applying the modified categorical approach to California Penal Code § 459); *United States v. Corona-Sanchez*, 291 F.3d 1201, 1207, 1211 (9th Cir. 2002) (en banc) (applying the modified categorical approach to determine if a conviction under California Penal Code § 484(a) was a "theft offense" even though § 484(a) did not require a showing that the defendant had taken or exercised control over the property as required by the generic crime); *United States v. Rivera-Sanchez*, 247 F.3d 905, 908-09 (9th Cir. 2001) (en banc) (remanding to the district court to apply the modified categorical analysis to a conviction under California Health and Safety Code § 11360(a) even though § 11360(a) does not contain the intent element required by the generic crime); *United States v. Franklin*, 235 F.3d 1165, 1169-72 (9th Cir. 2000) (applying the modified categorical approach to California Penal Code § 459)); *United States v. Williams*, 47 F.3d 993, 994-95 (9th Cir. 1995) (same); *United*

if the majority's reading of *Navarro-Lopez* is correct, we have actually overruled the *Li* majority opinion—a remarkable outcome given *Navarro-Lopez*'s reference to the *Li* concurrence's examples without any indication that the majority opinion was incorrect. *See Navarro-Lopez*, 503 F.3d at 1073. In *Li*, we were required to determine whether eight fraud-related federal offenses, none of which contained the amount of loss as an element, were aggravated felonies under 8 U.S.C. § 1227(a)(2)(A)(iii) because they were offenses that "involve[ ] fraud or deceit in which the loss to the victim or victims exceeds $10,000." *Id.* § 1101(a)(43)(M)(i).[6] Although we ultimately held that the record of conviction was inadequate to satisfy the modified categorical analysis, we still felt bound to use that approach to reach our conclusion; an approach that is clearly wrong under our statement in *Navarro-Lopez. See Li*, 389 F.3d at 897-99.

At least twenty-four published decisions from 1990 to 2009 have applied the modified categorical approach to cases where the crime of conviction lacked an element of the generic crime. *See supra* n.6. These cases were joined or

*States v. Alvarez*, 972 F.2d 1000, 1005-06 (9th Cir. 1992) (same); *United States v. Dunn*, 946 F.2d 615, 620 (9th Cir. 1991) (same); *United States v. Sweeten*, 933 F.2d 765, 769 (9th Cir. 1991) (applying the modified categorical approach to a Texas burglary statute that did not require the use or threatened use of physical force as required for a crime of violence) *overruled on other grounds by United States v. Grisel*, 488 F.3d 844, 847 (9th Cir. 2007); *United States v. O'Neal*, 937 F.2d 1369, 1372-74 (9th Cir. 1990) (applying the modified categorical approach to California Penal Code § 459) *overruled on other grounds by United States v. Sahakian*, 965 F.2d 740 (9th Cir. 1992).

[6]As discussed below, *see infra* Part III.D*,* some of the decisions cited in this Part, have been overruled or abrogated by the Court's recent decision in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), holding that a $10,000 loss requirement is not an "element" of 8 U.S.C. § 1101(a)(43)(M)(i). I cite these cases here not as support for their ultimate holdings, but to show that the statement in *Navarro-Lopez* conflicts with the approach taken by our precedent and sister circuits.

authored by at least twenty different active judges (out of twenty-seven) presently serving on the Ninth Circuit. I see no reason to upset such a large number of opinions decided by such a wide array of distinguished jurists over the course of almost two decades of our circuit history. It is hard for me to believe that we intended to do so based on the examples provided in a single judge's concurrence to a three-judge panel opinion.

Moreover, no other circuit has adopted the strict reading of the modified categorical approach enumerated in *Navarro-Lopez*. Indeed, many cases where our sister circuits have applied the modified categorical analysis are inconsistent with the broad pronouncement in *Navarro-Lopez* or apply a much more flexible approach in determining when the modified categorical analysis applies.[7] The strict application of *Navarro-*

---

[7]*See, e.g., United States v. Eirby*, 515 F.3d 31, 37 (1st Cir. 2008) ("If . . . the statute's language is broad enough to encompass both acts that constitute violent crimes and acts that do not, the court must take a second step and determine whether the record of conviction reveals all the elements of a violent crime."); *Conteh*, 461 F.3d at 60-62 (using modified categorical analysis when removal statute required at least a $10,000 loss to the victim but the statute of conviction did not have a loss element); *Knapik v. Ashcroft*, 384 F.3d 84, 92 n.8 (3d Cir. 2004) (noting that the categorical approach may be abandoned either when the underlying criminal statute is divisible or when the "terms of the statute on which the removal is based invites inquiry into the facts of the underlying conviction"); *Soliman v. Gonzales*, 419 F.3d 276, 285-86 (4th Cir. 2005) (using modified categorical analysis because statute of conviction did not contain all the elements of generic theft, specifically the taking of property, to determine that a conviction under Virginia's credit card fraud statute was not an aggravated felony); *United States v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006) ("If the statutory definition embraces both violent and non-violent crimes or is *otherwise ambiguous*, the court . . . may look to [various documents] to determine whether the violent or non-violent aspect of the statute was violated." (emphasis added)); *Ali v. Mukasey*, 521 F.3d 737, 743 (7th Cir. 2008) (holding that "when deciding how to classify convictions under criteria that go beyond the criminal charge—such as the amount of the victim's loss, or whether the crime is one of 'moral turpitude' " the agency may consider evidence beyond the charging papers or

*Lopez*'s pronouncement places us in conflict with the law in each of these circuits without ever recognizing that a conflict even exists.[8]

## C

Because of the manner in which *Navarro-Lopez* summarily announced this novel legal principle, we have witnessed a number of false starts and conflicting decisions within the Circuit, and I am afraid that we have left the district courts

---

judgment of conviction); *Eke v. Mukasey*, 512 F.3d 372, 379-81 (7th Cir. 2008) (using modified categorical analysis to determine that a state conviction for fraudulently using another person's identity information irrespective of the amount of loss was an aggravated felony because it resulted in a loss of more than $10,000 to the victims); *Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1108-09 (10th Cir. 2006) (using modified categorical analysis to determine that conviction for crime of contributing to the delinquency of a minor, which could encompass urging a minor to commit "anything from jaywalking to murder," was sexual abuse of a minor because it was based on a charge that the alien induced, aided, and encouraged a child to engage in non-consensual sexual contact); *Obasohan v. U.S. Att'y Gen.*, 479 F.3d 785, 789-90 (11th Cir. 2007) (using modified categorical analysis to conclude that a restitution order did not demonstrate a counterfeit conspiracy conviction resulted in a loss over $10,000 even though "the elements of the conspiracy . . . did not require that any loss amount be proved").

[8]The Second and Fifth Circuits appear to require that the statute be divisible; that is, the statute of conviction contain at least one subsection that meets the generic definition, even if another section would not satisfy the definition. *See, e.g.*, *Wala v. Mukasey*, 511 F.3d 102, 108 (2d Cir. 2007) ("[A] petitioner necessarily pleads to facts when, for example, he actually admits specific facts in his plea colloquy or comparable judicial record that establish he violated a divisible statute in [a] manner that satisfies the criteria of the pertinent removability statute."); *Larin-Ulloa v. Gonzales*, 462 F.3d 456, 464 (5th Cir. 2006) ("If the statute of conviction defines multiple offenses, at least one of which does not describe an aggravated felony, we apply a modified categorical approach . . . to determine whether the conviction was 'necessarily' for a particular crime defined by the statute that meets the aggravated felony conviction.").

scratching their collective heads. *Navarro-Lopez* has made our jurisprudence in this area as clear as mud.

At least two opinions have been published, withdrawn, and then re-published because the panel failed to recognize the broad implications of *Navarro-Lopez*'s statement. *See Kawashima v. Gonzales*, 503 F.3d 997, 1001-03 (9th Cir. 2007) (decided one day before *Navarro-Lopez*, using modified categorical analysis to determine whether convictions under 26 U.S.C. § 7206(1) and § 7206(2) qualify as aggravated felonies because the loss to the government exceeded $10,000), *withdrawn and superseded by Kawashima v. Mukasey*, 530 F.3d 1111, 1115-16 (9th Cir. 2008) (finding that the modified categorical approach does not apply because "[t]he *Navarro-Lopez* rule, which requires that the statute of conviction must contain every element of the generic offense before we resort to the modified categorical approach, plainly applies in this setting"), *abrogated by Nijhawan v. Holder*, 129 S. Ct. 2294 (2009); *United States v. Aguila-Montes de Oca*, 523 F.3d 1071, 1076-78 (9th Cir. 2008) (applying the modified categorical approach to a conviction under California Penal Code § 459 even though § 459 does not include an unlawful entry element as required by the generic burglary crime), *withdrawn and replaced by United States v. Aguila-Montes de Oca*, 553 F.3d 1229, 1233 (9th Cir. 2009) (finding that the modified categorical approach cannot apply because a conviction under § 459 is lacking the unlawful entry element). Both of these cases sparked separate opinions from members of the panel questioning the rule laid out in *Navarro-Lopez*. *See Kawashima*, 530 F.3d at 1118-24 (O'Scannlain, J. and Callahan, J., concurring specially); *Aguila-Montes de Oca*, 553 F.3d at 1234 (Gould, J., dissenting) ("[A]pplication of [*Navarro-Lopez*] to the California burglary statute here is inconsistent with the scope intended by the United States Supreme Court.").

At least three opinions after *Navarro-Lopez* appear to ignore its requirements altogether. *Carillo-Jaime v. Holder*,

572 F.3d 747 (9th Cir. 2009) (applying the modified categorical approach even though the California fraud statute does not require a showing that property was taken "without consent," the second element of the generic "theft offense" described at 8 U.S.C. § 1101(a)(43)(G)); *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 862-63 (9th Cir. 2008) (applying the modified categorical approach even though the crime of conviction, 18 U.S.C. § 751, did not contain two elements of an obstruction of justice charge); *United States v. Almazan-Becerra*, 537 F.3d 1094, 1096-1100 (9th Cir. 2008) (applying the modified categorical approach to determine if California Health and Safety Code § 11360(a) constitutes a drug trafficking offense, even though § 11360(a) does not contain the necessary intent element for a drug trafficking offense).[9]

In a subsequent en banc decision we employed the modified categorical approach in direct conflict with *Navarro-Lopez* while purporting to leave the issue untouched. In *United States v. Snellenberger*, 548 F.3d 699, 701-02 (9th Cir. 2008), we applied the modified categorical approach to California's burglary statute, California Penal Code § 459, which is plainly missing at least one element of the generic burglary crime. *See id.* at 705-06 (M. Smith, J., dissenting). Nonetheless, the decision purports to "express no opinion on the application of *Navarro-Lopez* to the facts of this case." *Id.* at 702.

It is not surprising that in light of the manner in which *Navarro-Lopez* announced its rules and these subsequent decisions, at least one district court has simply decided to ignore *Navarro-Lopez* altogether in applying the modified

---

[9]Our decision in *Szalai v. Holder*, 572 F.3d 975 (9th Cir. 2009), also applies the modified categorical approach to a case where the crime of conviction goes beyond the generic crime. The opinion entirely ignores *Navarro-Lopez*, and does not contain any discussion of whether the crime of conviction is missing an element of the generic crime. However, I did not include *Szalai* in the list above because it is entirely unclear to me if the statute in that case is simply "broader" than the generic crime or if it is "missing" an element altogether.

categorical approach. *United States v. Ramos-Medina*, 2009 WL 399249 (S.D. Cal. Feb. 18, 2009) (refusing to "find that *Navarro-Lopez* overruled earlier precedents directly addressing first degree residential burglary under [California Penal Code] § 459" because "[t]here is simply no indication that the en banc decision of *Navarro-Lopez* sought to overrule [prior precedent]").

I can hardly fault the district courts for failing to apply a rule that we ourselves have failed to explain, defend, or consistently follow.

### D

Finally, I address the Supreme Court's recent decision in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), which makes our decision in *Navarro-Lopez* all the more remarkable.

In *Nijhawan* the Court added a precursor to our general categorical/modified categorical approach. The Court held that we must first decide whether a requirement under the generic crime is an "element" of the generic crime, as opposed to simply a description of the "particular circumstances" attendant to a generic crime. *Id.* at 2298. If the former, we must apply the framework from *Taylor* and *Shepard*; if the latter, we must ensure that the BIA used "fundamentally fair procedures." *Id.* at 2302-03. Although the Court did not explain the specific contours of fundamentally fair procedures, it noted that the *Taylor* and *Shephard* framework was unnecessary in such an analysis. *Id.*

With regards to *Nijhawan*'s specific facts, the Court held that the $10,000 loss requirement in 8 U.S.C. § 1101(a)(43)(M)(I) is not an element, but simply "applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." *Id.* at 2302. It went on to hold that the BIA's proceeding was not fundamentally unfair: The government was forced to prove

the loss requirement by clear and convincing evidence, and the loss was "tied to the specific counts covered by the conviction," namely, the defendant's uncontradicted stipulation showing that the conviction involved losses considerably greater than $10,000. *Id.* at 2303.

*Nijhawan* does not directly affect the resolution of the present case. It is undisputed, and plain from the statutory language, that the requirements of 18 U.S.C. § 2252(a)(2), (4) at issue in this case are "elements" of the generic crime, not simply a description of the particular attendant circumstances under which the crime was committed. Both parties agree that *Taylor* and *Shephard* apply, and that we are not simply reviewing for "fundamentally fair procedures." *Id.* at 2303.

However, *Nijhawan* does affect *Navarro-Lopez* in one respect. It overruled the only decision that *Navarro-Lopez* cited as support for its novel proposition: *Li*'s concurrence. Chief Judge Kozinski would have held in *Li* that the modified categorical approach could not apply to the $10,000 loss requirement in 8 U.S.C. § 1101(a)(43)(M)(i) because the loss requirement was an *element* of the crime—an element that was not present in the crime of conviction. However, *Nijhawan* specifically holds that the loss requirement is not an element and that the framework from *Taylor* and *Shephard* does not apply to this portion of § 1101(a)(43)(M)(i). *Li*'s concurrence is no longer good law. Thus, *Navarro-Lopez*'s statement, which overturns two decades of Ninth Circuit precedent, goes further than any of our sister circuits in limiting our review of prior convictions, and has caused nothing but confusion and disarray within our circuit, is based entirely on a view that has been rejected by the Supreme Court.

IV

Putting my criticisms of *Navarro-Lopez* aside, and assuming that we are bound by the *Li* concurrence's analysis of *Taylor*, I would find that the modified categorical analysis still

applies in this case and that Aguilar-Turcios was convicted of an aggravated felony.

A

*Navarro-Lopez* says that "[w]hen the crime of conviction is missing an element of the generic crime altogether, we can never find that 'a jury was actually required to find all the elements of' the generic crime." 503 F.3d at 1073. Here, Aguilar-Turcios pled guilty to using a government computer to access pornographic websites, while the generic crime requires the use of a government computer to access *child* pornography: a "visual depiction involv[ing] the use of a minor engaging in sexually explicit conduct."[10]

Child pornography is a subset of pornography. If the record reveals that the pornographic websites he accessed in connection with the Article 92 charge contained child pornography, I see no reason why we should not be able to consider that information. I therefore vigorously disagree with the majority's assertion that "Article 92 and section 2-301(a)(2)(d) are thus 'missing an element of the generic crime altogether'—a visual depiction of a minor engaging in sexually explicit conduct." Maj. Op. at 13940. This case is precisely like the first example given in the *Li* concurrence, which is the source of the rule in *Navarro-Lopez* that the majority purports to apply. Put differently, child pornography is to pornography as a gun is to a weapon.

_____

[10]Specifically, the relevant statues in this case require the defendant to either "knowingly receive[ ] . . . any visual depiction that has been . . . transported in interstate or foreign commerce . . . by any means including by computer . . . if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct," 18 U.S.C. § 2252(a)(2), or "knowingly access[ ] with intent to view, . . . matter which contain[s] any visual depiction" while "on any land or building . . . under the control of the Government of the United States . . . if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct," *id.* § 2252(a)(4).

Although I believe this is the correct analysis after *Navarro-Lopez*, this case illustrates the absurdity of a rule that distinguishes between crimes that are "broader" than the generic crime and crimes that are simply "missing" an element of the generic crime. The majority and I agree that possessing or accessing child pornography is an element of the crimes described in 18 U.S.C. § 2252(a)(2), (4). Is pornography simply "broader" than child pornography, or is pornography "missing" an element of child pornography altogether? The majority says it is "missing"; I say that it is simply "broader." And, of course, we are both correct. That is because there is no logical distinction between "broader" and "missing" elements—they are two sides of the same coin.

A few examples from our case law prove the point. In *United States v. Bonat,* 106 F.3d 1472, 1475 (9th Cir. 1997), we were faced with an Arizona burglary statute that would "allow a conviction even if the intent to commit the crime was formed after entering the structure," while the generic burglary crime requires "*entry* into . . . [a] structure, *with* intent to commit a crime." *Taylor*, 495 U.S. at 598 (emphasis added). This statute is both "broader" than and "missing" an element of the generic burglary crime depending on one's viewpoint: It is "broader" because the statute encompasses burglary where intent is formed after entering the structure, but it is also completely "missing" the element of entry *with* the intent to commit a crime.

Similarly, in *United States v. Rodriguez-Guzman*, 506 F.3d 738, 745-46 (9th Cir. 2007), we recognized that to be convicted of statutory rape in California the victim must be under the age of eighteen, whereas the generic federal statutory rape crime requires a showing that the victim is under the age of sixteen. *Id.* Again, this statute could be viewed as "broader" than the generic crime or "missing" an element altogether: Broader in that the crime encompasses victims that are between the ages of 16 and 18, but also completely "missing"

the under-the-age-of-16 element of the generic crime.[11] In other words, almost any statute that is "broader" than the generic crime can be easily re-characterized as "missing" an element by defining the overbreadth as the absence of an element.

Given the lack of any logical distinction between "broader" and "missing," it appears that after *Navarro-Lopez* all we can reliably do is compare any given factual situation to the *Li* concurrence, which, we are told, "provid[es] examples." *Navarro-Lopez*, 503 F.3d at 1073. Applying this scratch-and-sniff approach to the present case, there is simply no more principled distinction between "child pornography" and "pornography" than between "guns" and "weapons"; therefore, the modified categorical approach should apply. I admit that my reading of "broader" is no more principled than the majority's reading of "missing." I simply have the fortuitous fact on my side that the example in the *Li* concurrence is virtually indistinguishable from the present case. Unfortunately, this is the level of sophistication we are left with after *Navarro-Lopez.*

## B

Having concluded that the modified categorical analysis is appropriate to use in this case, I have no difficulty finding that Aguilar-Turcios' conviction for violating Article 92 necessarily shows that he committed the aggravated felony of knowing possession of child pornography. This is so for one

---

[11]These are not the only examples of the difficulty in determining whether a crime is "broader" than the generic crime or "missing" an element altogether. *See United States v. Etimani*, 328 F.3d 493, 503-04 (9th Cir. 2003) (applying the modified categorical approach when the crime of conviction only required a "sexual act" whereas the generic crime required "sexual contact"); *United States v. Hernandez-Castellanos*, 287 F.3d 876, 880-81 (9th Cir. 2002) (applying the modified categorical approach when the crime of conviction required a showing of "substantial risk of imminent death or physical injury" while the generic crime merely required a "substantial risk that physical force may be used").

unavoidable reason: The only pornography that Aguilar-Turcios admitted to accessing on his government computer during the plea colloquy were the six images of child pornography.

The charging document in this case leaves no room for doubt about what activities led to Aguilar-Turcios' conviction for violating Article 92. The dates of the offenses and the serial number of the computer charged under Article 92 are identical to the dates and serial number charged under Article 134, which specifically and exclusively charges knowing possession of child pornography. Aguilar-Turcios pled guilty to both charges contemporaneously in a single plea proceeding. When read together, the charging document and the plea colloquy, leave no doubt that Aguilar-Turcios pled guilty because he "wrongfully and knowingly possess[ed] visual depictions of minors engaging in sexually explicit conduct."

The Stipulation of Fact, relied on by the court martial during the plea colloquy, provides further confirming evidence. Aguilar-Turcios admitted, in connection with the Article 92 violation, that he accessed "pornographic internet sites" on the computer in his workspace. In connection with the Article 134 charge, he admitted that he downloaded six images of minors engaging in sexually explicit activity from "pornographic internet sites" that he accessed on his workspace computer. The conclusion that Aguilar-Turcios' admission to viewing "pornographic internet sites" on the same computer, on the same dates, refers to the child pornography is unavoidable.

If there were still any lingering doubt, there is additional record evidence that underscores that Aguilar-Turcios knew that the images he downloaded onto his computer depicted minors engaging in sexually explicit activity. The military judge presiding over the plea proceedings carefully walked through all of the elements of what would be, in the civilian world, a conviction under 18 U.S.C. § 2252, and Aguilar-

Turcios admitted all of them. *Indeed, the only pornographic images that Aguilar-Turcios specifically admitted during the plea colloquy to downloading on a government computer, were the six images of child pornography*. The Article 92 conviction therefore "necessarily" found that Aguilar-Turcios had knowingly possessed child pornography because, at the time the military judge accepted Aguilar-Turcios' plea, he had only admitted to viewing child pornography.

That Aguilar-Turcios explicitly admitted to viewing the child pornography in connection with the Article 134 charge, and not the Article 92 charge, gives me only brief pause. Nothing in *Taylor* or *Shepard* limits our modified categorical review to that portion of the charging document or plea colloquy that pertains to the specific charge at issue. Instead, we are permitted to consult these documents to determine if the jury or other factfinder "necessarily" found that the alien committed a removable crime. The only factual basis on which the military judge *could* have found Aguilar-Turcios guilty of an Article 92 violation was his viewing of the six child pornography images admitted to in the plea colloquy, as those images are the only ones mentioned in the record at the time the military judge accepted the plea.

V

The record presented to the BIA and the Immigration Judge leaves no room for doubt about the conduct to which Aguilar-Turcios pled guilty. Had he not been in the military at the time of his offense, or had his conduct occurred off-base, he could have been prosecuted under either California Penal Code § 311.11, which tracks precisely the elements of 18 U.S.C. § 2252, or under § 2252 itself, which is statutorily defined as an aggravated felony, *see* 8 U.S.C. § 1101(a)(43)(I), and his Article 92 conviction "necessarily" found all of the elements of a § 2252 violation.

This is not a close case. Aguilar-Turcios was convicted of a removable offense. I respectfully dissent.